Emerson E. ARCHBOLD, Appellant,

v.

Jesse BROWN, Secretary of Veterans Affairs, Appellee.

No. 93–903.

United States Court of Veterans Appeals.

April 30, 1996.

John D. Sawyer, La Jolla, CA, was on the brief, for appellant.

Mary Lou Keener, General Counsel; Norman G. Cooper, Assistant General Counsel; R. Randall Campbell, Deputy Assistant General Counsel; and Rudrendu Sinhamahapatra, Washington, DC, were on the brief, for appellee.

Before FARLEY, MANKIN, and STEINBERG, Judges.

STEINBERG, Judge:

The appellant, Korean-conflict veteran Emerson E. Archbold, appeals a July 1, 1993, Board of Veterans' Appeals (BVA or Board) decision denying his claims for increased ratings for residuals of burn scars of his left and right hands, each currently evaluated as 10% disabling, and for an increased (compensable) rating for burn scars of the face. Record (R.) at 5–13. Pursuant to a November 1994 joint motion, the Court previously had dismissed the portion of the appeal with respect to a current claim for increased ratings for hand-burn-scar residuals; in the motion the parties had agreed that the issue of an increased rating for face-burn scars had not been joined in this appeal and is not therefore before the Court. The only issue remaining before the Court relates to the claim that an August 1953 Department of Veterans Affairs (VA) regional office (RO) decision contained clear and unmistakable error (CUE) in assigning no more than a 10% rating for burn-scar-residuals of each hand. In May 1995, the appellant filed a motion to reopen the record on appeal (ROA) to include certain documents omitted from the ROA.

The Court will treat this motion as one to supplement the ROA out of time and will grant the motion. For the reasons that follow, the Court will vacate the Board decision insofar as it failed to address the CUE claim and remand that matter for further proceedings in accordance with this opinion.

## I. Background

The veteran served on active duty in the United States Army from November 1950 to November 1952, with a tour of duty in Korea. R. at 18–20. In October 1952, a Military Physical Evaluation Board (MPEB) determined that burn residuals of the veteran's hands were incurred during service and assigned a 40% disability rating, expressly noting that it was using VA's Diagnostic Codes. R. at 115. After his discharge from service, a January 1953 VARO decision awarded a 100% convalescent rating, effective December 1, 1952, for severe burns to his hands and face. R. at 134. Based on findings from a VA clinical record reporting a two-month hospitalization for plastic surgery (R. at 139–40), the RO in August 1953 reconsidered and decided that the veteran's "service-connected disability warrant[ed] an evaluation of 20[ % ]" (R. at 142), a 10% rating for each hand, effective July 1953 (R. at 143). In December 1989, he requested an increased rating for his hand-burn residuals (R. at 218), and the RO denied his claim and continued the 20% rating in July 1990 (R. at 248, 249). The veteran filed a Notice of Disagreement (NOD) in September 1990, stating that he disagreed with the 20% rating and requesting an examination. R. at 251. In January 1991, the RO issued a Statement of the Case (SOC). R. at 282–86.

In March 1991, the veteran submitted to VA, inter alia, a copy of the August 1953 RO decision finding that his service-connected disability as to his hands warranted a 20% rating and copies of the October 1952 MPEB findings. R. at 293, 295, 300–02, 305. In response, the RO in an April 15, 1991, letter, stated:

Our letter of Aug. 13, 1953[,] informed you that service connection was granted at the 20% rate for your combined disabilities. You had one year from the date of that letter to appeal this decision. Your right

to appeal has expired and your present claim must be denied.

Military Medical Evaluation Boards act independently, as we do and their findings do not bind us. We evaluated your claim on the evidence of record in 1953. You were properly notified of our findings in the above mentioned letter.

To claim an increase you will need to submit new and material evidence showing that your disability has, in fact, worsened.

R. at 312. In a June 6, 1991, letter, the veteran raised a claim that the 20% disability rating assigned by the August 1953 RO decision for his hand-burn residuals should be retroactively corrected to 40%, and he attached, inter alia, the October 1952 MPEB findings. R. at 317–20, 322–24. He stated:

The main point I would like to make is noted on page 3 of [the] proceedings of the [MPEB]. [Block] # 28 [of the form used by MPBE noted:] "Such unfitness is 40% disabling, in accordance with the standard schedule of ... rating disabilities in current use by the VA." [Block] # 29[:] Such unfitness is permanent. [Block] # 32[:] Recommendations and remarks "Plastic surgery can be accomplished....[" Block] # 28[:] States very clearly that 40% disability was based on ratings in use by [ ] VA. [Block] # 29[:] States clearly that this is permanent. [Block] # 32[:] [A]llows for the fact that plastic surgery can be accomplished at a later date.

My point is # 1, 40% is the lowest rating [that my disability] should have ever gone, based on VA rating[ ] practices. # 2[.] This is rated permanent. # 3[.] This allowed for surgery at a later date.

. . . .

In summary[,] I feel that the 40% rating based on VA standards established October 9, 1952[,] should be honored, and that the amount paid since September 1, 1953[,] to present should be corrected, that is a 20% correction for four hundred thirty nine months.

R. at 318, 320. A handwritten notation at the bottom of the first page of the veteran's June 1991 letter stated that the letter was being "accepted in lieu of [VA Form] 1–9". R. at 317. In a July 10, 1991, letter to the veteran, the RO noted that it was replying to his June 6, 1991, letter, and stated:

Please note that as we explained in our letter of April 15, 1991, the findings of a [MPEB] do not bind [VA]. Although they might state [that] they are using the Rating Schedule which [ ] VA uses, their determination of the evaluation based on the findings in a particular case may still differ.

We will be happy to reevaluate your claim if you furnish evidence of recent treatment for your service-connected disabilities or furnish us with authorization to obtain records where you have been recently treated.

R. at 341. In response to an inquiry by a Congressman as to the status of the veteran's claims, the RO wrote in July 1991:

[The veteran] has made reference to the proceedings of his [MPEB] held in 1952 and its findings that his total disability evaluation is 40%. *We advised him on July 10, 1991, that the findings of the MPEB do not bind the VA,* despite the fact that it might use the same schedule for rating disabilities that the VA uses. In addition, we must base our disability evaluation upon the current severity of the veteran's disabilities rather than on their severity in 1952.

We have accepted [the veteran's] letter of June 6, 1991, as a substantive appeal and will presently refer his appeal to the Board ... for an independent review.

R. at 343–44 (emphasis added).

A statement from the veteran on a VA Form 1–9, Substantive Appeal to the Board, dated July 29, 1991 (stamped "received" on August 5, 1991, by the RO) stated, inter alia, that he was entitled to a 40% rating for his hand-scar residuals (R. at 348) and that "[t]his amount should be corrected for the past 400 months—using the same interest [and] penalties scale used by the I[nternal] R[evenue] S[ervice]" (R. at 349). An August 8, 1991, statement by the veteran's representative to the RO reiterated: "The veteran further contends that he should be paid retroactive for the past 38 years at 40%." R. at 346. In a November 5, 1991, document from

the veteran, entitled "Brief of evidence and arguments to reinforce and clarify claims on my behalf at hearing to be held November 15, 1991, [before the BVA] in ... Washington, D.C. 20420", presented to and accepted by the Board at the ensuing BVA hearing (R. at 364), the veteran stated: "My concern is to have my disability acknowledged and corrected to the original 40% which was set on October 9, 1952, at Brooke Army Hospital in San Antonio, Texas, as was stated in their report...." R. at 368, 369. He reiterated the same arguments that had been presented in the July 29, 1991, Form 1-9 and August 8, 1991, representative's statement as to the need for a retroactive correction of the 20% rating assigned in 1953. R. at 369-70.

At the November 1991 hearing, the BVA panel chairman told the veteran's representative from the American Legion that the Board had agreed "that the issue for appellate consideration [was] entitlement to an increased rating for burn scars of the hands and face"; that the American Legion representative had raised the CUE claim which had "not been certified for appellate review"; and that the Board had "agreed to take testimony as to that claim with the understanding that we will *refer* them [sic] to the RO for their *initial* consideration". R. at 354 (emphasis added). The Board then took testimony from the veteran regarding his assertion that there was CUE in the August 1953 RO decision. R. at 360-62, 364.

In a January 1992 decision, the Board, inter alia, "remanded" the CUE claim to the RO for it to "*formally* adjudicate the issue of whether the rating action of August 10, 1953, was clearly and unmistakably erroneous in failing to award schedular ratings of 20[%] for each hand". R. at 379-80. The Board noted that the purpose of this remand was "to accord due process". R. at 380. The Board deferred a decision on all issues "pending completion of the remand process", noting that the CUE claim, inter alia, was "'inextricably intertwined' with the certified issues" then on appeal. R. at 379. The Board also noted that if the RO decision was adverse "the veteran and his representative should be furnished an appropriate [S]upplemental [S]tatement of the [C]ase [ (SSOC) ]

and be afforded a reasonable opportunity to reply." R. at 380.

In September 1992, the RO, inter alia, denied the veteran's CUE claim. R. at 418–23. On October 21, 1992, the RO issued an SSOC stating that that SSOC was "the first notice to the veteran" of the September 1992 RO decision determining, inter alia, that the 10% (rather than a 20%) rating assignment of August 10, 1953, of each hand was not clearly and unmistakably in error on his claim. R. at 433. The RO's cover letter, enclosing the October 1992 SSOC, stated:

Before placing your records on the docket of the [Board], we are giving you the opportunity to make any comment you wish concerning the additional information in the enclosed [SSOC]. If you have filed a Substantive Appeal with respect to the issues contained in the original [SOC] or prior [SSOC], a response at this time is optional.

If this [SSOC], however, contains an issue which was not included in any prior [SOC] or [SSOC], you must respond within 60 days to perfect your appeal as to the new issue. If you do not timely file a Substantive Appeal as to the new issue(s), we will place your records on the docket of the [Board] for review of the prior issues....

R. at 425. Apparently, a November 1992 SSOC was issued with a cover letter stating that the veteran "must respond with a substantive appeal as to the new issues within 60 days of the SSOC dated November 3, 1992". R. at 441. The veteran did not respond to the SSOC, and the Board in its July 1993 BVA decision here on appeal did not consider the CUE claim. Rather, the Board stated:

The case was remanded [sic] by decision of January 1992, for initial consideration of additional issues raised in the course of the appeal. The additional issues were addressed in a rating action of September 1992, and [SSOCs] were issued in October 1992 and November 1992. These were accompanied by a letter informing the veteran that *an appeal as to any new issues must be perfected by the submission of a substantive appeal.* No substantive appeal was received, and the case was re-

ferred to the Board, where it was docketed in March 1993. It was referred to the appellant's representative since October 1992, [the] Disabled American Veterans [ (DAV) ], and that organization submitted additional written arguments to the Board in April 1993.

R. at 6 (emphasis added).

## II.  Court Proceedings

In his March 1994 brief, the appellant argued that the Board had erred in failing to address the CUE issue, and that the CUE issue should be remanded to the Board if the Court finds that it has no jurisdiction over that issue because of the Board's failure to consider it. Brief (Br.) at 16. In his May 1994 brief, the Secretary argued, inter alia, that the CUE claim was not properly before the Court because the veteran had abandoned that claim by not filing a substantive appeal as to it in response to the October 21, 1992, SSOC. Br. at 13. The Secretary conceded that the October 1992 SSOC had addressed the CUE claim as a new issue. He also maintained that the Court does not have jurisdiction over the claim because the issue was not raised to and addressed by the Board. *Id.* at 14–15.

On March 20, 1995, the Court issued an order, inter alia, directing the Secretary to show cause why the CUE claim should not be remanded to the Board for action to preserve the veteran's due process rights. The Court noted that it appeared that the October 21, 1992, SSOC had not been furnished to the service organization, the DAV, which had held the veteran's power of attorney on that date (*see* R. at 425; Supplemental R. at 1) and that the SSOC had therefore not been mailed pursuant to the Secretary's regulations. *See* 38 C.F.R. § 3.103(b) (1995) ("[c]laimants and their representatives are entitled to notice of any decision made by [VA] affecting the payment of benefits or the granting of relief"); 38 C.F.R. § 19.30 (1995) ("[t]he [SOC] will be forwarded to the appellant at the latest address of record and a separate copy provided to his or her representative (if any)").

Both parties have filed responses to the Court's order. Together with his response, the appellant also filed a motion to reopen the ROA so as to include in it the November 3, 1992, SSOC and its accompanying cover letter from the RO, in light of the Secretary's having not included those documents in the ROA.

## III.  Analysis

The Secretary contends that the issue whether the August 1953 RO decision was the product of CUE should not be remanded to the BVA because "the issue is not properly before this Court" and that the veteran's "due process rights were not implicated in this matter." Br. at 1. The Secretary states that, following the RO's September 1992 decision, the SSOC not only notified the veteran of the adverse action taken on the CUE claim but also advised him "of his obligation to file a response within 60 days" and that he did not file his substantive appeal within the 60–day period as required under 38 C.F.R. § 20.302(c) (1995). *Id.* at 6. The appellant, in essence, contends that the September 1992 RO decision on the CUE claim was not final, but is still appealable to the BVA, because his representative was not mailed a copy of either the October or November 1992 SSOCs.

The fundamental procedural deficiencies that are controlling here, as discussed below, are the failure of VA to inform the veteran of his appellate rights in connection with the July 1991 RO decision which initially denied his CUE claim, to issue an SOC after he filed his July 1991 NOD on the CUE claim, and to return the CUE claim automatically to the Board pursuant to 38 C.F.R. § 19.38 for its review, after the RO's September 1992 decision on remand from the Board. Because the disposition of this case turns on these deficiencies, the Court need not address the following two issues also raised by the facts in this case: (1) Whether the veteran's representative, the DAV, was required to be furnished a copy of the October 21, 1992, and November 3, 1992, SSOCs, based on the veteran's power of attorney (dated October 20, 1992—one day prior to the mailing of the October 21, 1992, SSOC—but containing an acknowledgment date by VA of January 28, 1993) in favor of that service organization; and (2) which party bears the burden of

submitting evidence that such power of attorney was *received* by the RO, pursuant to 38 C.F.R. § 20.602 (1995), before the issuance of the SSOCs.

### A. NOD as to CUE Claim

■ This Court's appellate jurisdiction derives exclusively from statutory grants of authority provided by Congress and may not be extended beyond that permitted by law. *See Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800, 818, 108 S.Ct. 2166, 2178, 100 L.Ed.2d 811 (1988); *see also Prenzler v. Derwinski*, 928 F.2d 392, 393–94 (Fed. Cir.1991); *Skinner v. Derwinski*, 1 Vet.App. 2 (1990). The Court has jurisdiction to review only those final BVA benefits decisions prior to which an NOD was filed on or after November 18, 1988, as to an underlying decision of an RO or other agency of original jurisdiction. *See* Veterans' Judicial Review Act, Pub.L. No. 100–687, § 402, 102 Stat. 4105, 4122 (1988) (found at 38 U.S.C. § 7251 note) [hereinafter VJRA § 402]; 38 U.S.C. § 7105. Pursuant to 38 U.S.C. § 7105(a), (d)(1), (3), an NOD initiates appellate review in the VA administrative adjudication process; and the request for appellate review is completed by the claimant's filing of a substantive appeal (VA Form 1–9 Appeal) [hereinafter 1–9 Appeal] after an SOC is issued by VA. *See Roy v. Brown*, 5 Vet.App. 554, 555 (1993); 38 C.F.R. § 20.200 (1995). The appellate review is carried out on behalf of the Secretary by the BVA under 38 U.S.C. § 7104(a).

Section 7105(b) of title 38, U.S.Code, sets forth the statutory requirements for an NOD. The NOD must be in writing and filed by the claimant or a representative within one year "from the date of mailing of notice of the result of initial review or determination." 38 U.S.C. § 7105(b)(1), (b)(2); *see* 38 C.F.R. § 20.302(a) (1995). If an NOD is not filed within the one-year time period, the RO decision "shall become final and the claim will not thereafter be reopened or allowed, except as may otherwise be provided by regulations not inconsistent with this title". 38 U.S.C. § 7105(c); *see Rowell v. Principi*, 4 Vet.App. 9, 17 (1993). An NOD must be filed with "the activity which entered

the determination with which disagreement is expressed". 38 U.S.C. § 7105(b)(1); *see Hamilton v. Brown*, 39 F.3d 1574, 1582–85 (Fed.Cir.1994), *aff'g* 4 Vet.App. 528, 538 (1993) (en banc).

■ An NOD is defined by regulation as "[a] written communication from a claimant or his or her representative expressing dissatisfaction or disagreement with an adjudicative determination by the [RO] and a desire to contest the result"; it "must be in terms which can be reasonably construed as [expressing] disagreement with that determination and a desire for appellate review". 38 C.F.R. § 20.201 (1995); *Hamilton*, 4 Vet. App. at 531. "The purpose of the NOD, to which VJRA section 402 refers, is to initiate BVA appellate review by letting VA know, within one year from the date of VA's mailing its notice of the result of a determination by an AOJ[,] of the claimant's intent to appeal to the BVA." *Tomlin v. Brown*, 5 Vet. App. 355, 357 (1993). "There can be only one valid NOD as to a particular claim, extending to all subsequent RO and BVA adjudications on the same claim until a final RO or BVA decision has been rendered in that matter, or the appeal has been withdrawn by the claimant." *Hamilton*, 4 Vet.App. at 538, *aff'd*, 39 F.3d at 1582–85.

■ In this case, the veteran filed an NOD in September 1990 as to a July 1990 RO denial of an increased rating for burn scars of his hands and face. R. at 251. This NOD, contrary to the assertion of the Secretary, did not initiate an appeal as to a CUE claim because no such claim had yet been made. The CUE claim was first raised by the veteran in the June 1991 letter to the RO. In that letter, although the veteran did not expressly call it a "CUE" claim, the substance of his statement clearly raised CUE in the August 1953 RO decision:

My concern is to have my disability acknowledged and corrected to at least it's [sic] original 40% which was set on October 9, 1952, at Brooke Army Hospital in San Antonio, Texas.

. . . .

In summary[,] I feel that the ... amount paid since September 1, 1953 to present

should be corrected, that is a 20% correction for four hundred thirty nine months. R. at 308, 311; *see Mata v. Principi*, 3 Vet.App. 558 (1992) (per curiam order) (concluding that CUE had been properly raised to Board by appellant's filing with RO copy of letter to Board Chairman requesting reconsideration of prior Board decision, asserting that local court had jurisdiction to render adoption decree (a conclusion contrary to that prior Board's decision), and alleging error in that prior decision with respect to that conclusion, even though appellant did not use term "CUE" in her letter).

In specific response to that letter raising this CUE claim, the RO's July 10, 1991, letter to the veteran indicated that it construed his contention as being that VA was bound by the MPBE's 1952 rating action finding that his hands were permanently disabled at 40%, and rejected that contention, finding instead that the MPBE findings "do not bind the VA". R. at 343–44; *see also* R. at 341. The RO went on to advise him that he could bring another claim, for a current increase in ratings, based on current medical evidence, and that it would then "reevaluate" such a claim, the RO having denied a current rating increase (above 20%) in July 1990 (R. at 249), which issue was then on appeal to the BVA. *See* R. at 251, 282–86. Within one month after receiving the July 1991 disallowance of his CUE claim contention that the RO in 1953 was bound by the Army rating of his disability, the veteran submitted the July 29, 1991, statement on the VA Form 1–9 (which was stamped "received" on August 5, 1991, by the RO), contending that, inter alia, he was entitled to a 40% rating for his hand-scar residuals based on the MPBE's having rated them permanently disabled at 40% (R. at 348) and that "[t]his amount should be corrected for the past 400 months—using the same interest [and] penalties scale used by the I[nternal] R[evenue] S[ervice]". R. at 349. On August 8, 1991, the veteran's representative reiterated the request for a retroactive 40% rating. R. at 346.

The Court holds that the veteran specifically raised the CUE claim (that the RO in 1953 was bound by the Army's 40% "permanent" rating) in his June 1991 letter; that in July 1991 the RO specifically responded to that letter, evaluated the claim, and disallowed it; and that the July 1991 statement of the veteran on the Form 1–9 constitutes an NOD as to the RO's July 1991 decision disallowing the CUE claim and is sufficient to give this Court jurisdiction over that claim under VJRA § 402. *See Zevalkink v. Brown*, 6 Vet.App. 483, 489 (1994) (citing *Malgapo v. Derwinski*, 1 Vet.App. 397, 398–99 (1991), in holding that VA Form 1–9 was valid NOD); *Hamilton*, 4 Vet.App. at 538 (implicitly reaffirming *Malgapo* on this point as long as prior NOD had not been filed as to particular claim). The veteran's July 1991 statement meets the requirements of § 20.201 and was filed well within one year after the RO's mailing of notice of its July 1991 decision pursuant to section 7105(b)(1). This statement was received in August 1991 by the RO, "the activity which entered the determination with which disagreement is expressed". 38 U.S.C. § 7105(b)(1). The statement contains terms which can be reasonably construed as expressing disagreement with the July 1991 RO decision that "the findings of [an MPEB] do not bind [VA]" and that the "determination of the evaluation [by the MPEB] based on the findings in a particular case may still differ" from that of VA, expressing a desire to contest the result as is required by § 20.201. This statement referred to the CUE claim, although not specifically calling it a CUE claim, by stating that the veteran was seeking to "correct[ ]" his disability rating to 40% "for the past 400 months".

■ Although this statement was not expressly construed as an NOD by the Secretary, the Secretary's construction does not bind this Court. Whether a document is an NOD is a question of law for the Court to determine de novo under 38 U.S.C. § 7261(a)(1). *See, e.g., West v. Brown*, 7 Vet.App. at 329, 331–32 (1995) (en banc) (determining whether jurisdictionally valid NOD had been filed with respect to claim without having had such determination made by Board); *Hamilton*, 4 Vet.App. at 538–44. This statement was sufficient to initiate review of the CUE claim by the Board. *See* 38 U.S.C. § 7105(a).

### B. 1–9 Appeal as to CUE Claim

Appellate review of an RO decision is initiated by an NOD and "completed by a [1–9 Appeal] after [an SOC] is furnished...." 38 U.S.C. § 7105(a); 38 C.F.R. § 20.200. Upon receipt of an NOD, the RO will take "such development or review action as it deems proper.... If such action does not resolve the disagreement either by granting the benefit sought or through withdrawal of the notice of disagreement, such agency shall prepare [an SOC]." 38 U.S.C. § 7105(d)(1). After a claimant receives the SOC, he or she must file a 1–9 Appeal within "sixty days from the date the [SOC] is mailed," 38 U.S.C. § 7105(d)(3), or within the remainder of the one-year period from the date the notification of the RO decision was mailed, whichever period ends later. 38 C.F.R. § 20.302(b) (1995). VA regulations require that this 1–9 Appeal consist of either a VA Form 1–9, or correspondence containing the necessary information. 38 C.F.R. § 20.202 (1995). The 1–9 Appeal "permits the appellant to consider the reasons for an adverse RO determination, as explained in the SOC, and to formulate and present 'specific arguments relating to errors of fact or law' made by the RO". *Roy,* 5 Vet.App. at 555 (quoting 38 C.F.R. § 20.202); *see* 38 U.S.C. § 7105(d)(3).

■ In this case, although the veteran had not received an SOC after having filed his July 1991 NOD, he nevertheless filed correspondence which the Court holds meets the requirements for a 1–9 Appeal. At the November 1991 hearing before the Board, the veteran submitted, and the Board accepted, a written document which sought to clarify his claims. The document stated: "My concern is to have my disability acknowledged and *corrected* to the original 40% which was set on October 9, 1952, at Brooke Army Hospital in San Antonio, Texas, as was stated in their report...." R. 368, 369. He explained what portions of that report support his contention that he was entitled to a continued 40% rating, and stated that he felt that "the 40% rating based on VA standards should be honored and the amount paid since September 1, 1953[,] to present should be corrected." R. at 369.

This written statement presented to and accepted by the Board specifically identified the issue appealed; contained specific arguments as to the errors made by the RO in awarding him a 20% rating in 1953; and thus contained the necessary information required for a 1–9 Appeal by § 20.202. This November 1991 statement was timely filed since no SOC was provided to the veteran (under § 20.302(b), the veteran had until at least 60 days after the SOC was mailed to him in which to file his 1–9 Appeal) and, in any event, since the statement was received within the one-year appeal period which began in July 1991, the date the RO decision being appealed was mailed. *See* 38 C.F.R. § 20.302(b). The Court notes that the Board was obligated under 38 C.F.R. § 20.203 (1995) to notify the veteran if it was concerned about the adequacy of this 1–9 Appeal, and to allow him a period of 60 days within which "to present written argument or to request a hearing to present oral argument on this [procedural] question". The Board did not do so.

### C. Return of CUE Claim to the Board

The Secretary contends that the veteran did not file a 1–9 Appeal as to the CUE issue within 60 days after the October 21, 1992, SSOC, and thus "failed to perfect his appeal as to that issue and the matter must be treated as abandoned". Br. at 6–7.

VA regulations in section 19.38 of title 38, Code of Federal Regulations, provide as to cases remanded by the Board to an RO:

When a case is remanded by the [Board], the [AOJ] will complete the additional development of the evidence or procedural development required. Following completion of the development, the case will be reviewed to determine whether the additional development, together with the evidence which was previously of record, supports the allowance of all benefits sought on appeal. If so, the Board and the appellant and his or her representative, if any, will be promptly informed. *If any benefits sought on appeal remain denied following this review, the [AOJ] will issue a[n SSOC] ... [and] the case will be returned to the Board for further appel-*

*late processing unless the appeal is withdrawn or review of the response to the [SSOC] results in the allowance of all benefits sought on appeal. Remanded cases will not be closed for failure to respond to the [SSOC].*

38 C.F.R. § 19.38 (1995) (emphasis added).

The U.S. Court of Appeals for the Federal Circuit in *Hamilton* explained the meaning of 38 C.F.R. § 19.182 (now § 19.38) as follows: "[A] case *which has been remanded* to the unit [ (the RO) ] which made the initial determination is automatically returned to the Board for further processing if full relief is not awarded by the [RO] *on remand* ". *Hamilton*, 39 F.3d at 1585 (emphasis added). Under § 19.38, a claimant need take no further action, including the submission of a response to an SSOC, to effectuate the return to the Board of an already appealed claim for its continued review if any benefits sought on appeal with respect to that claim remain denied. *See* 38 C.F.R. § 20.302(c) (where appeal has been perfected, "the response to [an SSOC] is optional and is not required"); *Hamilton, supra.*

In this case, the CUE claim was disallowed by the RO, appealed to the BVA, and then remanded (together with his claims for current increased ratings) by the Board to the RO in 1992 for a "formal" adjudication of CUE and additional development on other claim(s). On remand, the RO in September 1992 denied the CUE claim and in October 1992 issued an SSOC which included the CUE claim. Because the CUE claim *had* been disallowed by the RO before that claim had been appealed to the Board, and that claim was remanded and denied by the RO on remand, that claim was required to be referenced in the SSOC and to be automatically returned to the Board because benefits (the CUE claim) had remained denied after the RO's adjudication on remand. *See* 38 C.F.R. § 19.38; 20.302(c).

■ The veteran was not required to respond to the October 1992 SSOC in order to have his CUE claim returned to the Board for completion of its appellate review of that claim because he had filed a Substantive Appeal as to that claim prior to the Board remand. *See* 38 C.F.R. § 20.302(c); *see also* 38 C.F.R. § 20.202 (claimant will not be presumed to be in agreement with any statement of fact contained in SSOC which is not specifically contested). Accordingly, the Court holds that in July 1992, when the Board decided the appeal, it had before it a fully perfected appeal on the CUE issue; that the veteran's appeal to the BVA of his CUE claim initiated by his July 1991 NOD was not completed by the RO's September 1992 decision on remand because the benefit remained denied; and that that matter should therefore have been automatically returned to the BVA, without the need for any further action by the veteran, for its continued appellate processing pursuant to 38 C.F.R. § 19.38 and a final Board decision pursuant to 38 U.S.C. § 7104(a). The Board erred in concluding otherwise.

On appeal to this Court, the veteran having raised the issue of the Board's failure to review whether there was CUE in the August 1953 RO decision, the Court will remand that matter to the Board for review. *Cf. Isenbart v. Brown*, 7 Vet.App. 537, 541 (1995) (remanding TDIU claim to Board to review RO's denial of that claim). The Court has no jurisdiction to conduct plenary review of the CUE claim and can review only a specific BVA adjudication of that claim. *See Russell v. Principi*, 3 Vet.App. 310, 314–15 (1992) (en banc).

#### D. Miscellaneous

The Court further concludes that the appellant's motion to reopen and redesignate the ROA will be treated as an out-of-time motion to supplement the ROA and will be accepted for filing out-of-time and then granted, because all documents relevant to this appeal that were before the Board should be included in the ROA. The Court notes that the ROA filed by the Secretary did not contain the November 1992 SSOC, but did contain an RO letter (date illegible) to the veteran stating: "[W]e issued [to] you [SSOCs] ... dated October 21 and November 3, 1992, which outlined the actions taken on your claim." R. at 441. Also, the table of contents for the ROA included a listing for both SSOCs, but the ROA included a copy of only the October 1992 SSOC. R. at 4, 426.

134

## IV. Conclusion

Upon consideration of the record, supplemental record, and the submissions of the parties, the Court accepts for filing the appellant's out-of-time motion to supplement the ROA and grants it. The Secretary will promptly file a supplemental ROA accordingly. The Court reverses the Board's July 12, 1993, decision to the extent that it found that the veteran was required at that time to perfect his appeal as to the CUE claim, which was described in the SSOC, by the submission of a 1–9 Appeal. The Court vacates the July 12, 1993, BVA decision and remands the veteran's CUE claim for BVA adjudication consistent with this opinion and in accordance with section 302 of the Veterans' Benefits Improvements Act, Pub.L. No. 103–446, § 302, 108 Stat. 4645, 4658 (1994) (found at 38 U.S.C. § 5101 note) (requiring Secretary to provide for "expeditious treatment" for claims "remanded" by BVA or Court). *See Allday v. Brown,* 7 Vet.App. 517, 533–34 (1995). Any final decision by the Board following the remand herein ordered will constitute a new decision which, if adverse, may be appealed to this Court only upon the filing of a new NOA with the Court not later than 120 days after the date on which notice of the new Board final decision is mailed to the appellant.

MOTION TO SUPPLEMENT GRANTED; REVERSED IN PART AND VACATED AND REMANDED.