Citation Nr: 1546214 
Decision Date: 10/30/15 Archive Date: 11/10/15

DOCKET NO. 10-08 748 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Houston, Texas


THE ISSUES

1. Entitlement to a compensable initial disability rating for service-connected seborrheic dermatitis of the face and eyebrow.

2. Entitlement to a compensable initial disability rating for service-connected tinea corporis of the axilla. 

3. Entitlement to service connection for posttraumatic stress disorder (PTSD). 


REPRESENTATION

Appellant represented by: Texas Veterans Commission


ATTORNEY FOR THE BOARD

S.M. Kreitlow

INTRODUCTION

The Veteran had active military service from March 1972 to September 1976, August 1979 to August 1983, October 1992 to September 1997, July 1998 to January 1999 and March 2002 to March 2007. 

This matter comes before the Board of Veterans' Appeals (Board) on appeal from an April 2007 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Houston, Texas.

In his February 2010 substantive appeal, the Veteran requested a hearing before a Veterans Law Judge. Thereafter, in an April 2013 written and signed statement, he withdrew that request. 

The Board remanded that Veteran's appeal in October 2014 for additional development, to include obtaining treatment records and a VA examination. The Board finds that substantial compliance with the prior remand has been accomplished. Substantial compliance with a remand order, not strict compliance, is required. See Donnellan v. Shinseki, 24 Vet. App. 167, 176 (2010); Dyment v. West, 13 Vet. App. 141, 147 (1999). Therefore, the Board may proceed forward with adjudicating the Veteran's claims without prejudice to him. See D'Aries v. Peake, 22 Vet. App. 97, 105 (2008). 

The issue of entitlement to service connection for PTSD is addressed in the REMAND portion of the decision below and is REMANDED to the Agency of Original Jurisdiction (AOJ).


FINDINGS OF FACT

1. The Veteran's seborrheic dermatitis of the face and eyebrows has not been productive of coverage of at least 5 percent of the entire body; of at least 5 percent of exposed areas affected; or use of intermittent systemic therapy, such as corticosteroids or other immunosuppressive drugs.

2. The Veteran's tinea corporis was productive of entire body coverage of least five percent, but less than 20 percent; however, the evidence fails to demonstrate it was productive of coverage of at least 20 percent of the entire body or exposed area coverage of at least 20 percent, or that is has required the use of systemic therapy, such as corticosteroids or other immunosuppressive drugs.

3. Neither the Veteran's service-connected seborrheic dermatitis of the forehead and eyebrows or tinea corporis of the axilla represents, either individual or aggregately, an exceptional disability picture.


CONCLUSIONS OF LAW

1. The criteria for a compensable disability rating for service-connected seborrheic dermatitis of the face and eyebrow are not met. 38 U.S.C.A. §§ 1155, 5103, 5103A and 5107 (West 2014); 38 C.F.R. §§ 3.159, 3.321, 4.1, 4.2, 4.3, 4.7 and 4.118, Diagnostic Code 7806 (2015).

2. The criteria for a 10 percent disability rating, but no higher, for service-connected tinea corporis of the axilla are met. 38 U.S.C.A. §§ 1155, 5103, 5103A and 5107 (West 2014); 38 C.F.R. §§ 3.159, 3.321, 4.1, 4.2, 4.3, 4.7 and 4.118, Diagnostic Code 7806 (2015).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. Notice and Assistance Requirements

Upon receipt of a complete or substantially complete application for a service-connection claim, 38 U.S.C. § 5103(a) and 38 C.F.R. § 3.159(b) require VA to review the information and the evidence presented with the claim and notify the claimant and his or her representative, if any, of what information and evidence not already provided, if any, is necessary to substantiate, or will assist in substantiating, each of the five elements of the claim including notice that a disability rating and an effective date for the award of benefits will be assigned if service connection is awarded. 38 U.S.C.A. § 5103(a) (West 2014); 38 C.F.R. § 3.159(b) (2014); Quartuccio v. Principi, 16 Vet. App. 183 (2002); Dingess v. Nicholson, 19 Vet. App. 473 (2006). 

For a claim seeking increased compensation for an already service-connected disability, 38 U.S.C.A. § 5103(a) requires, at a minimum, that VA notify the claimant that he/she must provide, or ask VA to obtain, medical or lay evidence demonstrating a worsening or increase in severity of the disability and the effect that worsening has on the claimant's employment in order to substantiate the claim. Vazquez-Flores, 22 Vet. App. 37 (2008). VA must also provide examples of the types of medical and lay evidence that the claimant may submit (or ask the Secretary to obtain) that are relevant to establishing entitlement to increased compensation. Id. The notice provided does not need to be veteran specific. Vazquez-Flores v. Shinseki, 580 F.3d 1270, 1277, 1277 (Fed. Cir. 2009) ("Vazquez-Flores II").

In this case, the Board notes that the Veteran's claims were originally ones for service connection for his skin disabilities, which were granted in the April 2007 rating decision. Thereafter, the Veteran disagreed with the finding that these disabilities were evaluated as noncompensably disabling. Consequently, since the Veteran's initial claims for service connection were granted, the Board finds that VA's obligation to notify him was met as the claims for service connection were obviously substantiated. See Dingess v. Nicholson, 19 Vet. App. 473 (2006). Therefore, any deficiency in either the timing or content of the notice provided relating to the Veteran's appeal for increased ratings is not prejudicial to him.

With respect to VA's duty to assist, VA is only required to make reasonable efforts to obtain relevant records that the Veteran has adequately identified to VA. 38 U.S.C.A. § 5103A(b)(1). All efforts have been made to obtain relevant, identified and available evidence. Neither the Veteran nor his representative have argued otherwise.

The duty to assist includes providing the Veteran a thorough and contemporaneous examination. Green v. Derwinski, 1 Vet. App. 121 (1991). The Veteran was initially afforded VA examinations in December 2006 and May 2009. In its October 2014 remand, the Board determined that the Veteran's statements after the last VA examination indicated a possible worsening in his condition and thus a new VA examination was required. That VA examination was provided in May 2015. Significantly, the Board observes that the Veteran does not report that the condition has worsened since he was last examined, and thus a remand is not required solely due to the passage of time. See Palczewski v. Nicholson, 21 Vet. App. 174, 182-83 (2007); VAOPGCPREC 11-95 (1995), 60 Fed. Reg. 43186 (1995). Moreover, the reports of these examinations reflect that the examiners reviewed the Veteran's past medical history, recorded his current complaints, conducted appropriate physical examinations, and rendered appropriate diagnoses and opinions consistent with the remainder of the evidence of record. The Board, therefore, concludes that these examination reports are adequate for purposes of rendering a decision in the instant appeal. See 38 C.F.R. § 4.2; see also Barr v. Nicholson, 21 Vet. App. 303, 312 (2007). The Veteran and his representative have not contended otherwise. 

Thus, the Board finds that VA has satisfied its duties to inform and assist the Veteran. Additional efforts to assist or notify him would serve no useful purpose. Therefore, he will not be prejudiced as a result of the Board proceeding to the merits of his claims. 

II. Analysis

In the April 2007 rating decision on appeal, the RO granted service connection for seborrheic dermatitis of the face and eyebrows and tinea corporis of the axilla and assigned a noncompensable disability rating for each disability. 

Disability ratings are intended to compensate impairment in earning capacity due to a service-connected disorder. 38 U.S.C.A. § 1155. Separate diagnostic codes identify the various disabilities. Id. Evaluation of a service-connected disorder requires a review of the veteran's entire medical history regarding that disorder. 38 C.F.R. §§ 4.1 and 4.2. 

It is also necessary to evaluate the disability from the point of view of the veteran working or seeking work, 38 C.F.R. § 4.2, and to resolve any reasonable doubt regarding the extent of the disability in the veteran's favor, 38 C.F.R. § 4.3. If there is a question as to which evaluation to apply to the veteran's disability, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria for that rating; otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. 

The Veteran's claims for higher evaluations for his service-connected skin disabilities are original claims that were placed in appellate status by his disagreement with the initial rating awards. In these circumstances, separate ratings may be assigned for separate periods of time based on the facts found - a practice known as "staged" ratings. Fenderson v. West, 12 Vet. App. 119, 126 (1999).

The Veteran's seborrheic dermatitis of the face and eyebrows was rated pursuant to Diagnostic Code 7806. The Veteran's tinea corporis of the axilla was rated pursuant to Diagnostic Code 7813, which directs the rater to evaluate dermatophytosis (i.e., ring worm) as disfigurement of the head, face or neck (Diagnostic Code 7800), scars (Diagnostic Codes 7801, 7802, 7804 or 7805), or dermatitis (Diagnostic Code 7806), depending on the predominant disability. 

Diagnostic Code 7806 provides for a 10 percent rating where at least 5 percent, but less than 20 percent of the entire body is covered, or at least 5 percent but less than 20 percent of exposed areas affected are covered, or there is intermittent systemic therapy such as corticosteroids or other immunosuppressive drugs required for a total duration of less than six weeks during the past 12-month period. A 30 percent rating is warranted where the condition affects 20 to 40 percent of the entire body or 20 to 40 percent of exposed areas affected, or; systemic therapy such as corticosteroids or other immunosuppressive drugs required for a total duration of six weeks or more, but not constantly, during the past 12-month period. More than 40 percent of the entire body or more than 40 percent of exposed areas affected, or; constant or near-constant systemic therapy such as corticosteroids or other immunosuppressive drugs required during the past 12-month period warrants a 60 percent maximum rating. 38 C.F.R. § 4.118, Diagnostic Code 7806.

In December 2006, the Veteran underwent a pre-discharge VA examination. He reported having a rash under his left arm for six months that caused itching, shedding and a red rash constantly. He denied any treatment for this condition. The examiner noted there was tinea corporis located on the left axilla causing exfoliation and crusting, which covered zero percent of exposed areas and 0.01 percent of the whole body. He was also noted to have seborrheic dermatitis on the face in the eyebrows with exfoliation and crusting that caused an itching and shedding rash on the eyebrows. It covered 0.01 percent of the exposed area and 0.001 percent of the whole body. The examiner noted that there was no ulceration, tissue loss, induration, inflexibility, hypopigmentation, hyperpigmentation, abnormal texture and limitation of motion and no functional impairment from either skin condition.

VA treatment records show the Veteran was seen in November 2007 with complaints of skin problems, but only in his arm pits and his chest. He did not mention having anything on his face. He was assessed to have seborrheic dermatitis on his chest and dermatitis, or possibly tinea, in the axillae (armpits). It was recommended that he see a dermatologist.

Private treatment records show that, later that month, he had an initial consultation with a private dermatologist and was diagnosed to have seborrheic dermatitis on the chest and eczema in both axillae. He was prescribed 2.5 percent Pramosone lotion. This private physician estimated that the surface area of body involvement of the chest and axillae is over five percent. A December 2007 follow-up note indicates his seborrheic dermatitis was extremely symptomatic and his topical regimen was changed to Luxiq foam. 

A December 2007 VA follow-up treatment note shows he reported seeing the private dermatologist and being prescribed Pramosone 2.5 percent that did not help and he was now prescribed Luxiq foam and ketoconazole shampoo. He reported having involvement in his scrotum as well. The assessment was seborrheic dermatitis. 

The Veteran underwent re-examination by VA in May 2009. At that time, he reported having episodes of scaling and peeling skin on his scalp on the occipital and frontal areas and on his eyebrows where it itches for which he was prescribed Ketoconazole shampoo. He reported his symptoms were well controlled with this topical medication. He also reported developing a scaly rash under his armpits and his anterior chest wall in service that had spread to the groin that produced itching so severe he would scratch causing bleeding. He was treating this with Betamethasone 0.1 percent lotion applied once a day. It was noted he used corticosteroids but not immunosuppressives to treat these skin condition. Symptoms consisted of itching and burning with occasional bleeding secondary to itching. On physical examination, he had scaling and thickening of the skin in the occipital area and scaling in the eyebrows. In the axilla, chest and groin, there was an erythematous, macular rash with scratch marks and bleeding nail marks. As to impairment of function, the Veteran reported that his skin conditions cause him inconvenience and embarrassment because of the scaling of the skin and the eyebrows. The examiner noted, however, that there was no scarring or disfigurement due to the skin disorders. The examiner initially estimated that the Veteran's skin conditions covered about five percent of exposed areas affected and less than two percent of the entire body; however, in a December 2009 addendum, he separated out the two skin disabilities and stated that the seborrheic dermatitis of the scalp covered two percent of the entire body surface and three percent of the exposed areas and the tinea corporis involved five percent of the total body and one percent of exposed areas. 

The Veteran was last examined in May 2015. The examiner noted that the last treatment seen in the records by a dermatologist was in December 2007 with treatment with 2.5 percent Pramosone lotion for seborrheic dermatitis involving the chest and axilla and ketoconazole shampoo. The Veteran stated he has not seen a dermatologist since then. He reported using over-the-counter Denorex solution, which is a mixture of coal tar/menthol, with good results. The examiner noted that he currently had a 1 cm. lesion on his scalp, but he denied any itching or dryness. The Veteran reported having occasional scaling on his scalp and, if he does use the lotion, his face and eyebrows turn red and scaly. The Veteran denies any symptoms of pain and itching spread into his arms as long as he uses his over-the-counter Denorex solution. The examiner noted that there was no scarring or disfigurement of the head, face or neck or systemic manifestations due to skin disease. The examiner stated that the Veteran had residual dryness/scaling on his scalp that covered less than five percent of the total body area and less than five percent of the exposed areas of the body. The examiner indicated there was no impact on the Veteran's ability to work due to his skin conditions. In conclusion, the examiner stated that the Veteran's service-connected skin conditions are stable at this time as he had not seen a dermatologist since December 2007, he used over-the-counter Denorex solution daily with good results, he had only a 1 cm. scalp lesion and no lesions on the face, eyebrows and arms, although the Veteran did state his symptoms recur if he does not use his solution. 

Seborrheic Dermatitis of Face and Eyebrows

The evidence shows the Veteran's seborrheic dermatitis of the face and eyebrows has not been productive of the criteria for a compensable disability rating under Diagnostic Code 7806. Clearly the evidence above fails to demonstrate that this skin disorder affects at least five percent of the entire body or five percent of the exposed areas. At most, it was noted to cover no more than two percent of the entire body surface and three percent of the exposed areas. See May 2009 examination. Although the private dermatologist who treated the Veteran in 2007 estimated total body involvement of the chest and axillae is over five percent

Furthermore, the evidence fails to demonstrate that this skin disability has ever required treatment with intermittent systemic therapy, such as corticosteroids or other immunosuppressive drugs. Although the May 2009 VA examiner noted the use of corticosteroids, the evidence clearly shows the Veteran has used only topical lotions and shampoo for this skin condition. 

The Board has also considered whether a compensable rating may be warranted under the rating criteria for scars on the head, face and neck. The Board notes that the Diagnostic Codes applicable to the scars were revised in October 2008. These revisions, however, apply only to claims that were filed on or after the effective date of October 23, 2008, or when the Veteran has specifically requested reconsideration of his claim under these revised criteria. As the Veteran's claim was filed before October 2008, evaluation of the Veteran's under these revised criteria is not warranted.

Under Diagnostic Code 7800 prior to the October 2008 revisions, the rating criteria assigned a compensable evaluation for disfigurement of the head, face, or neck when there is at least one characteristic of disfigurement. 38 C.F.R. § 4.118, Diagnostic Code 7800. The eight characteristics of disfigurement, for purposes of evaluation under § 4.118, are: (1) scar 5 or more inches (13 or more centimeters (cm.)) in length; (2) scar at least one-quarter inch (0.6 cm.) wide at widest part; (3) surface contour of scar elevated or depressed on palpation; (4) scar adherent to underlying tissue; (5) skin hypo- or hyper-pigmented in an area exceeding 6 square inches (39 sq. cm.); (6) skin texture abnormal (irregular, atrophic, shiny, scaly, etc.) in an area exceeding 6 square inches (39 sq. cm.); (7) underlying soft tissue missing in an area exceeding 6 square inches (39 sq. cm.); and (8) skin indurated and inflexible in an area exceeding 6 square inches (39 sq. cm.). Id. at Note (1). 

The evidence clearly demonstrates that the Veteran's seborrheic dermatitis of the face and eyebrows has not caused any disfigurement or that it has manifested any of the eight characteristics of disfigurement such that a compensable disability rating is warranted under Diagnostic Code 7800. 

Tinea Corporis of the Axilla

The Board finds that the evidence demonstrates that the Veteran's tinea corporis was productive of total body coverage of at least five percent and, therefore, a 10 percent disability rating is warranted based upon that finding. The Board acknowledges that this area includes other areas except for the left axilla to include the right axilla, the chest and the groin. It is clear, however, that the medical professionals felt that the skin problem in these areas was part of the Veteran's overall disability picture and the Veteran himself had stated multiple times that his condition was worsening and spreading to other areas of his body. Thus, the Board finds that, in all fairness, the Veteran's tinea corporis should be evaluated no matter where it is on the body so long as it can be deemed to be related to the originally service-connected site (i.e., the left axilla). The available evidence makes such a link. 

The Board finds, however, that a disability rating higher than 10 percent is not warranted as the evidence fails to demonstrate total body coverage of at least 20 percent, exposed area coverage of at least 20 percent or that it has required treatment with systemic therapy, such as corticosteroids or other immunosuppressive drugs. Total body coverage has been no more than five percent and exposed area coverage has been no more than two percent. In addition, as previously mentioned, the evidence fails to show systemic therapy has been used. Rather it shows the Veteran has only used topical therapy to treat his tinea corporis. 

Furthermore, the Board finds that evaluation under the Diagnostic Codes for rating scars is not warranted as the Veteran's predominant disability is clearly the skin disease as the evidence does not show any scarring as a result of this skin condition. 

Extraschedular Consideration

It is generally provided that the rating schedule will represent, as far as can practicably be determined, the average impairment in earning capacity in civil occupations resulting from a service-connected disability. 38 C.F.R. § 3.321(a). Loss of industrial capacity is the principal factor in assigning schedular disability ratings. See 38 C.F.R. §§ 3.321(a), 4.1. Indeed, 38 C.F.R. § 4.1 specifically states: "[g]enerally, the degrees of disability specified are considered adequate to compensate for considerable loss of working time from exacerbations or illnesses proportionate to the severity of the several grades of disability." See also Moyer v. Derwinski, 2 Vet. App. 289, 293 (1992) and Van Hoose v. Brown, 4 Vet. App. 361, 363 (1993) (noting that the disability rating itself is recognition that industrial capabilities are impaired). 

In the exceptional case, however, to accord justice, where the schedular evaluations are found to be inadequate, the Secretary is authorized to approve, on the basis of the criteria set forth in 38 C.F.R. § 3.321(b)(1), an extraschedular evaluation commensurate with the average earning capacity impairment due exclusively to the service-connected disability or disabilities. 38 C.F.R. § 3.321(b). The governing norm in these exceptional cases is a finding that the case presents such an exceptional or unusual disability picture, with such related factors as marked interference with employment or frequent periods of hospitalization, as to render impractical the application of the regular schedular standards. Id. The claimant's entire history is reviewed when making disability evaluations. See 38 C.F.R. § 4.1; Schafrath v. Derwinski, 1 Vet. App. 589, 592 (1995). 

The Court of Appeals for Veterans Claims (Court) clarified the analytical steps necessary to determine whether referral for extraschedular consideration is warranted. See Thun v. Peake, 22 Vet. App. 111, 115 (2008). First, it must be determined whether the evidence presents such an exceptional disability picture that the available schedular evaluations for that disability are inadequate, in other words, whether the disability picture presented in the record is adequately contemplated by the rating schedule. In doing so, there must be a comparison between the level of severity and the symptomatology of the claimant's disability with the established criteria provided in the rating schedule for this disability. Second, if the schedular evaluation does not contemplate the claimant's level of disability and symptomatology and is found inadequate, it must be determined whether the claimant's exceptional disability picture exhibits other related factors such as those provided by the regulation as "governing norms." Third, if the rating schedule is inadequate to evaluate a claimant's disability picture and that picture has attendant thereto related factors such as marked interference with employment or frequent periods of hospitalization, then the case must be referred to the Under Secretary for Benefits or the Director of the Compensation and Pension Service to determine whether, to accord justice, the claimant's disability picture requires the assignment of an extraschedular rating. 

In the present case, the Board finds that the rating criteria are adequate to evaluate the Veteran's skin disabilities, taken either individually or as a whole, because the evidence fails to demonstrate that they present an exceptional or extraordinary disability picture that would take them outside of the norm. 

The Board acknowledges that the rating criteria in Diagnostic Code 7806 does not contemplate the specific symptoms of the Veteran's skin conditions such as itching, scaling, crusting or exfoliation. Rather the criteria are based on the extent (in percentage) to which the entire body or exposed areas are affected by the skin condition or on the treatment required. See Schedule for Rating Disabilities; the Skin, 67 Fed. Reg. 49,590, 45,592 (July 31, 2002). Diagnostic Codes 7806 and 7813 also provides for alternative evaluation under the Diagnostic Codes for scars, depending on the predominant disability, for example, in cases where the active disease has been controlled but there are significant residuals. Id. at 49,593. These more objective criteria were expected to assure more consistent evaluations that the previous mostly subjective criteria. Id.

Nevertheless, the Board finds that the medical evidence does not demonstrate that the Veteran's symptoms are outside of what is expected normal for his skin disabilities. Furthermore, although the Veteran indicated his seborrheic dermatitis on the face and eyebrows has caused him some embarrassment and inconvenience, there is no indication of any real impact on his ability to function normally or that they caused impairment in his earning capacity beyond what is already been contemplated by the rating schedule. Thus, the Board finds that the rating criteria are adequate to evaluate this Veteran's skin disabilities and referral for consideration of an extraschedular rating is not warranted.

Conclusion

After considering all the evidence of record, the Board finds that the preponderance of the evidence is against finding that a compensable disability rating is warranted for the Veteran's service-connected seborrheic dermatitis of the face and eyebrows. However, the preponderance of the evidence does support a 10 percent disability rating, but no higher, for his service-connected tinea corporis. Furthermore, the preponderance of the evidence is against referral of the Veteran's claims for consideration of an extraschedular rating pursuant to 38 C.F.R. § 3.321(b). The Board has considered the doctrine of reasonable doubt in rendering this decision. Gilbert v. Derwinski, 1 Vet. App. 49, 57-58 (1990); 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102.


ORDER

Entitlement to an initial compensable disability rating for service-connected seborrheic dermatitis of the face and eyebrow is denied.

Entitlement to an initial 10 percent disability rating for service-connected tinea corporis is granted, subject to controlling regulations governing the payment of monetary benefits.


REMAND

The Board must consider all documents submitted prior to its decision and review all issues reasonably raised from a liberal reading of these documents. Suttmann v. Brown, 5 Vet. App. 127, 132 (1993) (citations omitted). Where such review reasonably reveals that the claimant is seeking a particular benefit, the Board is required to adjudicate the issue or, if appropriate, remand the issue to the RO for development and adjudication. However, the Board may not ignore an issue so raised. Id. 

Here, the Veteran filed a claim for service connection for PTSD in February 2011. By rating decision issued in June 2013, the RO denied the claim. On July 24, 2013, the Veteran submitted a VA Form 21-0958, Notice of Disagreement, specifically disagreeing with the June 2013 rating decision's denial of his claim for service connection for PTSD. 

In its October 2014 remand, the Board noted this information in the Introduction section and referred this matter to the RO for appropriate action; however, to date, neither a Statement of the Case has been issued to the Veteran nor has the claim been granted in full. Pursuant to 38 C.F.R. § 19.9(c), in such case, the Board shall remand with instructions for the agency of original jurisdiction to issue a Statement of the Case. Consequently, the Board remands this claim for the RO to issue a Statement of the Case. See 38 C.F.R. § 19.9(c). See also, Manlincon v. West, 12 Vet. App. 238, 240-41 (1999); see also Godfrey v. Brown, 7 Vet. App. 398, 408-410 (1995); Archbold v. Brown, 9 Vet. App. 124, 130 (1996); VAOPGCPREC 16-92 (O.G.C. Prec. 16-92). 

However, this issue will be returned to the Board after issuance of the Statement of the Case only if perfected by the filing of a timely substantive appeal. See Smallwood v. Brown, 10 Vet. App. 93, 97 (1997); Archbold, 9 Vet. App. at 130.

Accordingly, the case is REMANDED for the following action:

Provide the Veteran and his representative with a Statement of the Case as to the issue of entitlement to service connection for PTSD. The Veteran should be informed that he must file a timely and adequate substantive appeal in order to perfect an appeal of this issue to the Board. See 38 C.F.R. §§ 20.200, 20.202, and 20.302(b). If a timely substantive appeal is not filed, the claim should not be certified to the Board. If a timely substantive appeal is filed, this claim should be returned to the Board for further appellate consideration, as appropriate and subject to the current appellate procedures. 

The Veteran has the right to submit additional evidence and argument on the matter the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).




This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).




______________________________________________
MICHAEL MARTIN
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs