**Warren H. ISENBART, Appellant,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

No. 92–1320.

United States Court of Veterans Appeals.

Argued March 20, 1995.

Decided April 20, 1995.

Kenneth M. Carpenter, Topeka, KS, for appellant.

Adam K. Llewellyn argued, and Mary Lou Keener, Gen. Counsel, Norman G. Cooper, Asst. Gen. Counsel, R. Randall Campbell, Deputy Asst. Gen. Counsel, and Susan A. Wuchinich, Washington, DC, were on the brief, for appellee.

Before FARLEY, HOLDAWAY, and STEINBERG, Judges.

HOLDAWAY, Judge:

The appellant, Warren H. Isenbart, appealed a July 2, 1992, decision of the Board of Veterans' Appeals (BVA or Board), which denied the appellant's increased rating claims for chronic dermatitis and peptic ulcer, and also denied reopening of a claim for entitlement to service connection for a psychiatric disorder. Upon joint motion of the parties, this Court on July 20, 1994, ordered that the July 2, 1992, BVA decision be vacated and that the appellant's claims as described above be remanded. The Court also ordered the parties to submit supplemental memoranda addressing the issue of whether the appellant had filed a jurisdiction-conferring Notice of Disagreement (NOD) on a separate claim of entitlement to a total disability rating based upon individual unemployability (TDIU). With the latter limited issue now before the Court, the Court holds that, under the facts in the present case, the appellant's January 10, 1990, NOD sufficiently encompassed the TDIU claim.

## I. BACKGROUND

The appellant served on active duty with the U.S. Army from February 5, 1965, to August 18, 1967. He was discharged from service due to physical disability and was granted a 30% rating for dermatitis on June 12, 1967. A January 23, 1968, regional office (RO) rating decision granted a 10% rating for peptic ulcer and continued the 30% dermatitis (chronic eczema) rating. The appellant's skin was noted to be sensitive to sunlight, and his condition was manifested by a rash on his hands, arms, and back of the neck. An April 8, 1968, RO decision continued the latter ratings and denied service connection for a neuropsychiatric disorder. A February 15, 1971, RO decision continued the eczema and peptic ulcer ratings at 30% and 10%, respectively. On December 23, 1971, the RO received an NOD wherein the appellant stated that his skin condition "hindered" his job performance. Subsequent RO decisions denied any rating increases.

The appellant on July 11, 1972, requested that his claim be amended to include service connection for a nervous disorder. The VA on August 7, 1972, responded that the ner-

vous disorder claim had been previously denied and required new and material evidence in order to be reopened. A July 31, 1972, RO decision continued the 30% and 10% ratings for chronic dermatitis and peptic ulcer. An NOD was received on November 14, 1972. The appellant appealed to the BVA on December 14, 1972, and stated in his VA Form 1–9, Appeal to the BVA, that he had been laid off from employment "time and again" due to his skin condition. The BVA on April 17, 1973, denied service connection for a nervous condition and denied rating increases for chronic eczema and peptic ulcer.

RO decisions from December 1973 through January 1983 addressed the appellant's chronic eczema and peptic ulcer conditions, resulting in varying modifications of the appellant's ratings. On March 11, 1983, the RO received an NOD wherein the appellant stated that he had not worked for eight months due to his eczema condition. RO decisions on March 16, 1983, April 1983, and May 31, 1984, found no material change in the appellant's condition.

The appellant on June 17, 1989, sought to amend his claim, asserting residuals of Agent Orange exposure. The RO responded that exposure to herbicides was not a disease or disability, and that he needed to specify a disability and submit supporting medical evidence. The appellant on August 29, 1989, requested reopening his claim for an increased skin condition rating. The RO on September 8, 1989, continued the prior ratings.

The appellant submitted a letter dated September 12, 1989, from his employer, who stated that the appellant had missed 28 days over the prior three months, and that the appellant would lose his job if he could not work. The RO increased the eczema rating to 30% on October 27, 1989. The appellant then submitted a letter, dated November 27, 1989, from an employer who stated that the appellant had "made an excellent hand until his skin problems would flare up and he was often in so much pain he was unable to work." The RO on December 21, 1989, denied a rating increase for the appellant's chronic eczema. On January 10, 1990, the RO received an NOD which disagreed with the chronic eczema rating increase denial.

The appellant stated in this NOD that his skin condition had caused the loss of seven jobs in twenty years, including some part-time jobs. He further stated that he could not find a job because of his skin reaction to sunlight, chemicals, and fluorescent light, and that he could not support his family. The appellant also stated in his NOD that both his skin and ulcer conditions had caused him to miss "a lot of work," and that he had not worked since August 25, 1989.

The RO on January 23, 1990, denied rating increases for the appellant's chronic eczema and peptic ulcer, and also denied service connection for passive-aggressive personality disorder. The RO noted that a statement from VFW Post members requesting review for total disability compensation was considered. The VFW letter, dated January 15, 1990, stated that the appellant could no longer hold a job and should be awarded total disability compensation.

The RO's January 26, 1990, Statement of the Case (SOC) noted the appellant's contentions that he was severely disabled due to his skin, ulcer, and psychiatric problems, and therefore that he should be considered "totally disabled." The SOC decision addressed the chronic eczema, ulcer, and personality disorder claims. A January 30, 1990, letter from the adjudication officer to the appellant stated that the appellant's claim for a "total disability evaluation" due to his service-connected conditions was being deferred pending receipt of evidence and enclosed a TDIU application for the appellant to complete. The appellant submitted a formal TDIU application on February 2, 1990. In his February 2, 1990, VA Form 1–9, the appellant requested that his skin condition, ulcer, and personality disorder claim be rated at the maximum disability percentage. The appellant also related his employment problems, which he said had resulted in retirement because of his conditions.

An April 24, 1990, hearing addressed the chronic eczema, peptic ulcer, and nervous condition claims. The appellant related his ulcer problems, and stated that he "cannot work in this condition." He referred to the three claims noted above and said there were "no additional issues." A September 19,

---

**540**

1990, RO decision denied service connection for a heart condition, a claim which the RO noted had been raised at the personal hearing. The hearing officer's November 13, 1990, decision stated that additional issues raised, including entitlement to non-service-connected pension, individual unemployability, and service connection for a chronic neurosis, were referred to the RO rating board for consideration. The RO's December 24, 1990, Supplemental SOC (SSOC) noted the appellant's contention that he should be entitled to total disability.

A December 26, 1990, RO decision maintained the appellant's 30% chronic eczema rating and 20% peptic ulcer rating, and awarded non-service-connected ratings of 30% for chronic heart disease, 30% for passive-aggressive personality disorder, and 10% for asthma. The RO denied the existence of post-traumatic stress disorder and dysthymia, and also denied a rating for chronic obstructive pulmonary disease. The RO also denied the appellant's TDIU claim, concluding that "the veteran is not so severely disabled that all forms of substantially gainful employment are precluded." No NOD was received after the December 26, 1990, RO decision.

As noted earlier, the BVA in its July 2, 1992, decision here on appeal denied the appellant's claims for increased disability ratings for chronic eczema and peptic ulcer, and also denied reopening of the claim for service connection for a psychiatric disorder. The TDIU claim was not considered by the BVA.

## II. ANALYSIS

■ For this Court to have jurisdiction over an appellant's claim, the appellant must have filed a valid NOD on or after November 18, 1988. *See* Veterans' Judicial Review Act (VJRA), Pub.L. No. 100–687, § 402, 102 Stat. 4105, 4122 (1988) (found at 38 U.S.C. § 7251 note); *West v. Brown,* 7 Vet.App. 329, 331 (1995) (en banc). The question presented here is whether the appellant's August 1989 claim for an increase, with the evidence of unemployability attached thereto and presented subsequently, also encompassed a separate TDIU claim, and, if it did, whether the NOD filed as to the former claim also encompassed the TDIU claim.

The Secretary argues that the Court does not have jurisdiction over the TDIU claim because no NOD was timely filed as to the December 26, 1990, RO decision which denied the claim. Secretary's Brief (Br.) at 24. As noted above, the appellant submitted a January 10, 1990, NOD which disagreed with the December 21, 1989, RO denial of a rating increase for the appellant's chronic eczema. Because no NOD was submitted subsequent to the December 26, 1990, TDIU denial, *see* Joint Motion at 13, the Secretary maintains that the appellant failed to initiate an appeal to the BVA regarding the TDIU denial, with a resultant lack of jurisdiction for this Court. Secretary's Br. at 24.

■ The Court holds, on the narrow facts of this case, that the January 10, 1990, NOD did encompass the appellant's TDIU claim. Although the appellant did not submit a *formal* TDIU application until February 2, 1990, the Court finds upon review of the facts in the record that a well-grounded TDIU informal claim was submitted as a separate, but related claim when the appellant filed for an increased rating for his skin condition and supported his application with evidence of his unemployability. *See* 38 U.S.C. § 5107(a).

The origin of the appellant's TDIU claim can be traced back to his December 14, 1972, VA Form 1–9, wherein the appellant stated that he had been laid off from employment "time and again" due to his skin condition. The appellant in his March 11, 1983, NOD stated that he had not worked for eight months due to his eczema condition. The September 1989 letter from the appellant's employer asserted that the appellant had missed 28 days of work over a three-month period, and that he would lose his job if he could not work. The November 1989 letter from another employer stated that the appellant was not able to work due to the pain from his skin problems. In the January 10, 1990, NOD at issue here, the appellant asserted that his condition caused the loss of seven jobs over a twenty-year period, including the loss of part-time employment. He further stated in the NOD that he could not find a job because of his sensitivity to sunlight, chemicals, and fluorescent light, and that he could not support his family. The

appellant also asserted that his skin and ulcer conditions caused him to miss "a lot of work," and that he had not worked since August 25, 1989.

In its January 23, 1990, decision, the RO acknowledged the January 15, 1990, VFW letter which related that the appellant could no longer hold a job and requested that total disability compensation be considered. Moreover, the SOC initiated by the appellant's January 10, 1990, NOD, noted the appellant's contention that he was severely disabled due to his skin condition, ulcer, and psychiatric problems, and that he should therefore be considered totally disabled. Finally, in a letter dated January 30, 1990, which was a response to the January 10, 1990, NOD, the RO specifically acknowledged that "your *claim* for a total disability evaluation ... is deferred." (emphasis added). It is clear therefore that the RO considered the appellant to have filed an informal TDIU claim at the time he filed his "increase" claim, and the RO proceeded to send the appellant a formal TDIU claim application, just as 38 C.F.R. § 3.155(a) (1994) requires, to be filed within one year after the date it was sent to the appellant. The RO also, patently, treated the January 1990 NOD as encompassing the TDIU claim, and when it received the completed formal claim application on February 2, 1990, the RO was required under § 3.155(a) to consider it "filed as of the date of receipt of the informal claim."

Accordingly, the Court concludes that the record shows that there was a well-grounded TDIU claim in existence prior to the January 1990 RO decision and the appellant's January 1990 NOD. The facts reveal more than mere general statements of difficulty with employment. The language contained in the NOD sufficiently encompassed the RO's failure to adjudicate the TDIU claim in its December 21, 1989, decision, and therefore, appellate review was initiated.

■ At oral argument, counsel for the Secretary suggested that the appellant had withdrawn any TDIU claim when he said at the April 1990 hearing that the issues were evaluation of his service-connected skin condition and peptic ulcer and service connection for a nervous condition and that there were "no additional issues." The Court does not agree that these few words spoken orally provided the formality or specificity that withdrawal of an NOD requires. *See* 38 C.F.R. § 20.204(a), (c) (1994) (NOD may be withdrawn by an appellant or his or her representative "in writing before a timely Substantive Appeal is filed."). In addition, the appellant was entitled to rely on the recognition of his contention for a total disability rating that had been set forth by the RO in the January 1990 SOC and the December 1990 SSOC. Given the nonadversarial setting of the claims adjudication process, the Court concludes that the appellant did not abandon his TDIU claim.

### III. CONCLUSION

Upon consideration of the foregoing, the Court holds that a timely NOD was filed with regard to the RO's failure to adjudicate the appellant's TDIU claim in its December 1989 decision. On remand, the Board must review the RO's December 1990 denial of the appellant's TDIU claim, and that Board decision will be appealable here pursuant to VJRA § 402. The TDIU claim is REMANDED to the BVA for action consistent with this opinion.