**Ronnie L. PHILLIPS, Appellant,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

No. 94–987.

United States Court of Veterans Appeals.

Argued Aug. 28, 1996.

Decided Jan. 13, 1997.

Ronald L. Smith, for appellant.

Alice M. Fent, with whom Mary Lou Keener, General Counsel; Norman G. Cooper, Assistant General Counsel; Ron Garvin, Assistant General Counsel; and David W. Engel, Deputy Assistant General Counsel, Washington, DC, were on the pleadings, for appellee.

Before FARLEY, HOLDAWAY, and STEINBERG, Judges.

FARLEY, Judge, filed the opinion of the Court. STEINBERG, Judge, filed a separate opinion concurring in part and dissenting in part.

FARLEY, Judge:

The appellant, Ronnie L. Phillips, appeals a September 22, 1994, decision of the Board of Veterans' Appeals (BVA or Board) which granted an effective date of August 25, 1987, for an award of service connection for bilateral hearing loss. The Board also found that the appellant did not raise a claim of clear and unmistakable error (CUE) in February 1971 and March 1974 regional office (RO) rating decisions. In his brief and reply brief, the appellant addresses only the CUE claim issue; therefore, any issue concerning the effective date is deemed abandoned. *Bucklinger v. Brown*, 5 Vet.App. 435, 436 (1993).

The Secretary filed a brief seeking to dismiss the appeal, arguing that the appellant's Notice of Disagreement (NOD) predates the Court's creation. The appellant's counsel filed a reply brief arguing that the only NOD regarding the CUE claim was filed in September 1992, and therefore met the Court's jurisdictional requirements. Following oral argument, further briefing was ordered on the issue of whether the appellant had a disability in light of the authorities controlling at the time of the 1971 and 1974 rating decisions. For the reasons set forth below, the Court will affirm the decision of the BVA.

**I.**

The appellant's active service in the United States Army from January 1969 to January 1971 included a tour of duty in Vietnam. Record (R.) at 15, 47. A July 1968 preinduction physical examination revealed some hearing loss. R. at 20–22. A December 1970 separation examination indicated that the appellant had "poss[ible] high freq[uency] [hearing] loss," but the appellant denied ear trouble or hearing loss at that time. R. at 29, 31–32.

Upon discharge, the appellant filed a claim for service connection for, inter alia, high frequency hearing loss. R. at 39–40. In February 1971, the RO denied service connection for this condition. R. at 42. The RO stated:

On examination at induction the veteran was noted to have a bilateral hearing loss in the 4000 range. There was a 35 [decibel] loss in each ear. There [is] no record of any treatment or complaint of any ear condition during service but on examination at separation there was shown a possible high frequency hearing loss with a reading of 40 [decibels] in the 4000 range. This slight change is considered normal progression.

*Ibid.*

The appellant attempted to reopen his claim for service connection for hearing loss in February 1974. R. at 46. To this end he submitted a January 1974 statement from Dr. C. Elford Carpenter, who wrote that the appellant had "nerve deafness with average loss of 35 per cent [in] both ears. This is permanent and will gradually get worse. This was probably caused by exposure to mortor [sic] fire." R. at 48. The appellant

also submitted a January 1970 report concerning his award of a Bronze Star. The report stated:

> [The appellant's Company] began to receive incoming enemy mortar rounds at Fire Support Base Currahee. Private Phillips moved to his gun position amidst intense indirect fire. Although he was continuously subjected to the flying shrapnel from the hostile fire, he fearlessly continued his mission.

R. at 47. In March 1974, the RO again denied service connection, stating that Dr. Carpenter's letter "presents no new information to link [the appellant's] present disability with military service." R. at 51.

The appellant attempted to reopen his hearing loss claim in August 1987. R. at 55. He submitted a report from an August 1987 hearing test conducted by Dr. D. Thomas Upchurch which revealed moderate hearing loss at 1500 Hertz and moderately severe hearing loss between 2000 Hertz and 8000 Hertz. R. at 56. In November 1987, the RO found that the appellant had not submitted new and material evidence, and concluded that his "condition preexisted service and was normal progression." R. at 60. The appellant submitted another application for compensation for bilateral hearing loss in June 1988. R. at 64–67. The RO issued a confirmed rating decision denying the claim. R. at 69.

On October 24, 1988, the RO received a letter from the appellant [hereinafter "October 1988 Letter"] in which he stated: "I am writing in reference to the denial of Veterans benefits due to a loss of hearing which I sustained in Vietnam. I am requesting *that a hearing date be set so that* I might be able to present my case...." R. at 71. A hearing was conducted in November 1988, and the appellant testified that he was a gunner during service, firing "81 mm. mortar," and that they fired the weapons every night and were in turn fired upon "just about every day." R. at 75. He stated: "[W]hen we would get through with a fire mission, my head would feel swollen and bells would be in my ear and the guys next door they'd holler deflection and elevation and you couldn't even, you ha[d] to read their lips because you

couldn't hear anything." *Ibid.* The appellant also testified that he continued to have ear problems upon leaving the service. R. at 76.

The RO reopened the appellant's service connection claim in December 1988, and noted that the claim to reopen was received on October 24, 1988, the date of the appellant's letter requesting a hearing. R. at 86–87. The RO concluded that the appellant's testimony was "not sufficient to overcome the prior decision that the slight increase in hearing loss was due to normal progression" and denied service connection for hearing loss. *Ibid.*

In February 1989, the appellant submitted a letter from W.H. Kirby, a hearing specialist, who wrote that the appellant had normal hearing bilaterally through 1000 Hertz, but above that had "moderately severe sensorineural hearing loss bilaterally." R. at 89. He also stated: "These test results are certainly consistent with the high frequency hearing loss caused by exposure to loud noise. In Mr. Phillips['] case the exposure to artillery noise in Vietnam could certainly be the culprit." *Ibid.*

The RO received a statement from the appellant in July 1989 [hereinafter "July 1989 Statement"] in which he requested that he be examined for hearing loss and that VA review all his previous medical records and hearing test results. R. at 95. The RO issued a confirmed rating decision in July 1989, stating that the letter from Mr. Kirby "contains no concrete evidence that [the] veteran's pre-service hearing [loss] was increased beyond normal progression during service." R. at 98. In August 1989, the RO sent the appellant a Statement of the Case (SOC), which indicated that the RO had interpreted the July 1989 Statement as an NOD. R. at 102.

In September 1989, the appellant submitted a VA Form 1–9, APPEAL TO BOARD OF VETERANS APPEALS [hereinafter "September 1989 Form 1–9"], which stated, inter alia, that he was appealing "the previous determination as erroneous." R. at 107–09. He asserted that the "facts clearly show natural progression not to be the primary factor in

my hearing loss," and that there is "clear and unmistakable evidence that the increase in disability is *not* due to natural progress of the condition." *Ibid.* He concluded that the rating board "misconstrued [his] testimony and thereby reached an errouneous [sic] decision," and that he was "entitled to ... benefits commensurate with the date [he] first filed in 1971." R. at 109.

The BVA remanded the case to the RO in May 1990, after having found that the RO had failed to advise the appellant in the SOC of the laws and regulations that govern reopened claims. R. at 119. The RO was directed to issue a Supplemental SOC (SSOC) to correct this defect. *Ibid.* An SSOC was issued in May 1990 (R. at 122–23), and in February 1991, the BVA held that the appellant had not submitted new and material evidence (R. at 133–37). The appellant appealed to this Court, and in November 1991, the Court granted the parties' joint motion for a remand. R. at 147. The basis for the joint motion was that the BVA decision "does not contain the analysis required by" *Manio v. Derwinski,* 1 Vet.App. 140 (1991). R. at 142.

On remand to the BVA, the appellant submitted a document entitled "Supplemental Argument on Remand" [hereinafter "January 1992 Argument"], in which he argued that the RO's "determination of February 4, 1971, and all subsequent decisions were erroneous for failing to establish entitlement to service connection for bilateral hearing loss by aggravation under the provisions of 38 U.S.C.A. § 1154[and] 38 C.F.R. § 3.306(b)(2)." R. at 157. The BVA issued a decision in February 1992 which stated:

> The record in this case has been amplified by the veteran's statements, including those made under oath, in which he described his exposure to acoustic trauma during his tour of duty in Vietnam. In our judgment, this evidence was not available during previous adjudications and is "new." We also believe it meets the test of materiality because, if credible, it describes circumstances which could result in diminished auditory capacity. We do find his recollection of acoustic trauma consistent with the conditions of his service and

accept it as fact. Accordingly, the claim is reopened.

R. at 174. The BVA granted service connection for bilateral hearing loss, finding that the appellant's "hearing was not within normal limits at separation from service under the standards of [38 C.F.R. § 3.385]. The hearing loss by definition began during service." R. at 175. In May 1992, the RO implemented the BVA's decision and assigned a 10% disability rating for bilateral hearing loss, effective October 24, 1988, the date of the appellant's request for a hearing. R. at 179–80.

In June 1992, the appellant's representative submitted a memorandum [hereinafter "June 1992 Memorandum"] in which he referenced the "recent approval of his service connected claim for bilateral hearing loss." R. at 182. The representative wrote that the appellant "feels that the effective date of Oct. 24, 1988[,] is in error.... [A]s he filed his claim within one month from the date of his discharge, it is felt that the appropriate effective date for service connection for bilateral hearing loss should be the day after discharge." R. at 182. Shortly thereafter, the RO denied the appellant's claim for an earlier effective date, finding that the February 1971 RO decision had become a final decision because the appellant did not appeal from it, and that, accordingly, the appropriate effective date was the date of the reopened claim. R. at 184.

Several months later, the appellant's representative submitted a memorandum dated September 19, 1992, [hereinafter "September 1992 Memorandum"]. R. at 186. This memorandum referred to the June 1992 decision and stated, inter alia, that "it is felt that service connection should be established from Jan. 25, 1971." R. at 186. An SOC issued the following month. R. at 189.

In November 1992, the appellant submitted a completed VA Form 9, APPEAL TO BOARD OF VETERANS APPEALS [hereinafter "November 1992 Form 9"], in which he stated that he was appealing "the previous decision of the Board" and requested an effective date "back to 1971." R. at 197. His representative submitted VA Form 1–646, STATEMENT OF ACCREDITED REPRESENTATIVE IN AP-

PEALED CASE [hereinafter November 1992 Form 1–646], which asserted that "because the evidence was there in 1971, which led to the granting of his claim, ... [VA] was in error and should establish an earlier effective date." R. at 201.

The BVA, in the decision that is currently on appeal to this Court, concluded that the October 1988 Letter should be construed as an NOD rather than as a claim to reopen a previously denied claim. R. at 8. In reaching this conclusion, the BVA reasoned:

> [In the letter,] the veteran indicated that he was writing regarding the denial of his claim, and he requested a personal hearing in order to discuss the merits of his claim. The veteran did not specify to which denial by the RO he was referring. In this regard, the Board notes that he was still within the appellate period following the November 1987 rating decision.

*Ibid.* Based on this conclusion, the BVA granted an earlier effective date of August 25, 1987, the date the appellant attempted to reopen his claim for service connection for bilateral hearing loss. R. at 9. The BVA also held that: "[T]he veteran's challenge to the propriety of the February 1971 and March 1974 rating decisions is based solely on an argument that the evidence was improperly weighed and evaluated. Accordingly, we find that the veteran has *not* reasonably raised a question of CUE in those rating decisions." R. at 7.

## II.

As the United States Court of Appeals for the Federal Circuit recently confirmed, "it is well-established judicial doctrine that any statutory tribunal must ensure that it has jurisdiction over each case *before* adjudicating the merits...." *Barnett v. Brown,* 83 F.3d 1380, 1383 (Fed.Cir.1996). In this appeal, there are two interrelated but distinct threshold issues necessarily lurking in our jurisdictional inquiry. One is whether the appellant's claim of "clear and unmistakable error" under 38 C.F.R. § 3.105(a) was the subject of a timely and jurisdiction-conferring NOD so that this Court has jurisdiction to reach the merits of the claim. In order to resolve that issue, however, it is necessary in

this instance first to examine an even more basic issue, which is the one decided by the BVA: did the appellant ever present a cognizable claim of CUE so that there could be a jurisdiction-conferring NOD? Noting that it is equally well established that a court has jurisdiction to determine whether it has jurisdiction over a particular matter, *see Bell v. Hood,* 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946), we begin our inquiry with the question of whether the appellant presented a proper claim of CUE under 38 C.F.R. § 3.105(a) and our cases interpreting that regulation.

### A.

■ The question of whether the BVA erred in determining that a prior RO decision did not contain CUE is reviewed by this Court under the standard prescribed by 38 U.S.C. § 7261(a)(3)(A), i.e., whether the BVA decision is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Damrel v. Brown,* 6 Vet.App. 242, 246 (1994); *Russell v. Principi,* 3 Vet.App. 310, 315 (1992) (en banc). Here, however, the issue is not whether there was CUE in prior decisions but whether the appellant, as a matter of law, presented a CUE claim under 38 C.F.R. § 3.105(a). Therefore, as is the case with respect to the questions of whether a well-grounded claim was filed or whether new and material evidence was submitted to warrant reopening of a claim, our review of whether a CUE claim has been presented will be under the nondeferential de novo standard. 38 U.S.C. § 7261(a); *Butts v. Brown,* 5 Vet.App. 532 (1993) (en banc) (questions of law are reviewed de novo without any deference to BVA's conclusions of law); *see also Beyrle v. Brown,* 9 Vet.App. 24, 28 (1996) (regarding question of whether claim is well grounded); *Masors v. Derwinski,* 2 Vet.App. 181, 185 (1992) (regarding question of whether new and material evidence was submitted).

■ A CUE claim is a distinct claim, one with its genesis not in a statute but in a regulation. 38 C.F.R. § 3.105(a) (1995). Section 3.105(a) provides that "Previous determinations which are final and binding ... will be accepted as correct in the absence of

clear and unmistakable error. Where evidence establishes such error, the prior decision will be reversed or amended." A CUE claim is a collateral attack on a previous and final RO decision which seeks the revision, nunc pro tunc, of that decision. *Smith v. Brown*, 35 F.3d 1516, 1527 (Fed.Cir.1994). For the purpose of authorizing benefits, the reversal or an amendment of a prior decision on the grounds of CUE has the same effect as if the corrected decision had been made on the date of the reversed decision. The analysis of a CUE claim focuses on a prior unappealed RO decision in the context of the factors set forth in *Russell*:

> (1) "Either the correct facts, as they were known at the time, were not before the adjudicator (i.e., more than a simple disagreement as to how the facts were weighed or evaluated) or the statutory or regulatory provisions extant at the time were incorrectly applied," (2) the error must be "undebatable" and of the sort "which, had it not been made, would have manifestly changed the outcome at the time it was made," and (3) a determination that there was CUE must be based on the record and law that existed at the time of the prior adjudication in question.

*Damrel*, 6 Vet.App. at 245; (quoting *Russell*, 3 Vet.App. at 313–14). A CUE claim requires "some degree of specificity as to what the alleged error is and, unless it is that kind of error ... that, if true, would be CUE on its face, persuasive reasons must be given as to why the result would have been *manifestly* different but for the alleged error." *Fugo v. Brown*, 6 Vet.App. 40, 44 (1993). In practical terms, a claim that the evidence was improperly weighed or that the decision was wrong does not constitute a § 3.105(a) CUE claim. *Ibid.*

The appellant and our dissenting colleague argue that there is a CUE claim lurking in the 1992 submissions to the BVA in connection with the appeal of the RO's denial of a claim for an earlier effective date. However, the mere references in the January 1992 Argument (R. at 149–66) to a statute and a regulation, which, as the appellant indicated, had been brought to the attention of the RO and BVA previously (R. at 158), were made in the context of describing how the RO allegedly had erred in 1971 in denying entitlement to service connection, and not in an attempt to raise a separate claim of CUE under 38 C.F.R. § 3.105(a). With respect to statements to the effect that the 1971 and subsequent RO decisions were erroneous (*see* R. at 157, 158, 162), it is an "unassailable proposition that merely to aver that there was CUE in a case is not sufficient to raise the issue." *Fugo*, 6 Vet.App. at 44. "[B]road-brush allegations" and "general, non-specific claim[s] of 'error'" are insufficient to satisfy the requirement that CUE claims be pled with "some specificity." *Id.* at 43–44. Nor does the statement in the June 1992 Memorandum that "it is felt that the appropriate effective date for service connection for bilateral hearing loss should be the day after discharge" (R. at 182) raise a CUE claim with the requisite specificity. Rather than raising facts that, if believed, would have left a reviewer with the inescapable conclusion that the appropriate effective date had not been awarded, the bare allegations contained in the June 1992 Memorandum merely suggest that "previous adjudications had improperly weighed and evaluated evidence." *Id.* at 44. Such statements "can never rise to the stringent definition of CUE." *Ibid.* Even indulging the dissent's assumption that these 1992 submissions remained in the file when that claim for an earlier effective date was remanded from the BVA to the RO, their lack of specificity renders them insufficient to raise a cognizable CUE claim; they do not "call[ ] to the attention of later reviewers [an error that] *compels* the conclusion, to which reasonable minds could not differ, that the result would have been *manifestly* different but for the error." *Id.* at 43.

Similarly, the terse allegations of error contained in the September 1992 Memorandum, the November 1992 Form 9, and the November 1992 Form 1–646 do not meet the *Fugo* requirement. R. at 186, 197–98, 200–01. None of these statements alleges facts that, if true, would "*compel* [ ] the conclusion" that the 1971 and/or 1974 RO decisions would have been "*manifestly* different but for the error." *Fugo*, 6 Vet.App. at 43. Specifically, the appellant's requests for an effec-

tive date of 1971 (R. at 186, 197) lack reference to any fact or evidence which even remotely suggests the possibility of the type of error contemplated by 38 C.F.R. § 3.105(a). The appellant's acknowledgement that he has "to show reasons why . . . the decision should be changed" only vaguely alludes to reasons—as opposed to tangible evidence—which, in the opinion of the appellant, should change the outcome of the "*previous* " RO decision. R. at 197 (emphasis added). Finally, his representative's statement that "because the evidence was there in 1971, which led to the granting of [the appellant's] claim, . . . [VA] was in error and should establish an earlier effective date" (R. at 201), raises the specter of reweighing the original evidence and does not identify any specific error on the part of the rating board.

Nor can the vague statements made in documents preceding the 1992 submissions be said to have raised with the requisite specificity the possibility that there was CUE in the 1971 and/or 1974 RO decisions. To the extent that the September 1989 Form 1–9 alleged error on the part of the RO, such error was alleged to have been in the later RO decision, not those dating back to 1971 and/or 1974. R. at 108–09 ("For the following stated reasons I appeal the *previous* decision as erroneous." (Emphasis added.)).

Since the appellant did not present a claim of clear and unmistakable error under 38 C.F.R. § 3.105(a), the BVA's decision to that effect must be affirmed. That is not to say that the appellant cannot, in the future, present a claim that there was CUE under 38 C.F.R. § 3.105(a) in the 1971 and 1974 RO rating decisions; we hold only that, as a matter of law, he has yet to do so.

## B.

The above notwithstanding, we turn now to the issue of whether a jurisdiction-conferring NOD was filed because this Article I Court has jurisdiction over only those claims for which a valid NOD was filed on or after November 18, 1988. *Hamilton v. Brown*, 4 Vet.App. 528 (1993) (en banc), *aff'd*, 39 F.3d 1574 (Fed.Cir.1994); Veterans' Judicial Review Act, Pub.L. No. 100–687, § 402, 102 Stat. 4105, 4122 (1988) (found at 38 U.S.C.

§ 7251 note). For purposes of this analysis, we will assume that a cognizable claim of CUE was before the RO, either submitted directly by the appellant or on remand from the Board by virtue of the January 1992 argument.

### 1.

■ "There can be only one valid NOD as to a particular claim until a final RO or BVA decision has been rendered in that matter, or the appeal has been withdrawn by the claimant." *Hamilton*, 4 Vet.App. at 538; *West v. Brown*, 7 Vet.App. 329, 332 (1995) (en banc) ("A successful claimant has not had his case fully adjudicated until there is a decision as to all essential elements, i.e., status, disability, service connection, rating."). In order to determine which, if any, of the appellant's filings might be a jurisdiction-conferring NOD, the Court must first address whether the appellant's CUE claim is a claim different from his reopened claim for service connection. If the CUE claim is found to be part and parcel of the service-connection claim, the pre-November 18, 1988, NOD pertaining to the RO's denial of service connection and subsequent denial of an earlier effective date could be construed as embracing the RO's decision or, in this case, failure to issue a decision, with respect to whether there was CUE in the RO's 1971 and/or 1974 decisions and, therefore, this Court would not have jurisdiction. On the other hand, if the CUE claim is considered to be a claim separate and distinct from the service connection claim, our jurisdiction could be established by a different NOD. *See Ephraim v. Brown*, 82 F.3d 399, 402 (Fed.Cir.1996); *cf. Holland v. Brown*, 9 Vet.App. 324 (1996).

The Secretary, relying principally upon this Court's recent decision in *West, supra,* argues that the NOD relevant to the CUE claim is the October 1988 Letter, which disagreed with "the denial of Veteran's benefits due to loss of hearing" (R. at 71). Secretary's Brief (Br.) at 13. The appellant, on the other hand, argues that the CUE claim "has an entirely separate legal basis from that of his reopened claim. . . . Therefore, the [CUE] claim is distinct from the reopened claim, must be separately adjudicated and presents an independent basis for juris-

diction in this Court." Appellant's Br. at 4. The appellant maintains that the NOD with respect to the CUE claim is the September 1992 Argument. *Id.* at 11; Reply Br. at 2.

The Court held in *West* that a claim for service connection is comprised of several "essential" elements, including "(1) the veteran's status, (2) existence of a disability, (3) service connection of that disability, (4) degree of disability, and when in question, (5) effective date." 7 Vet.App. at 332. The adjudications of each element are inextricable parts of the adjudication of the original claim, and appellate review is initiated by the first NOD, irrespective of whether that NOD specifically disagrees with an RO decision on a particular element. *Ibid.* The rationale for this rule is that "[a] successful claimant has not had his case fully adjudicated until there is a decision as to all essential elements." *Ibid.; see also Hamilton,* 4 Vet. App. at 538 ("There can be only one valid NOD as to a particular claim, extending to all subsequent RO and BVA adjudications on the same claim until a *final* RO or BVA decision has been rendered in that matter, or the appeal has been withdrawn by the claimant").

The crux of the Secretary's argument is that, under *West,* a CUE claim is an "essential element" of a claim for service connection and is, for all intents and purposes, an earlier-effective-date "claim." However, in *West,* the appellant had explicitly and contemporaneously raised a claim of CUE along with a challenge to, inter alia, the denial of an earlier effective date. Thus, the Court held that the relevant NOD in that case "initiated the appeal . . . and that all subsequent adjudications of [the underlying] disability claim, including the rating and the effective date (CUE) elements, were part of the case to which the . . . NOD applied." 7 Vet.App. at 331. To the extent that the Secretary, as suggested during oral argument, relies upon the parenthetical in that sentence for the argument that all CUE claims must be viewed as elements of the related claim, such reliance would be misplaced. We view the phrase "effective date (CUE) elements" in the *West* holding as descriptive of the cir-

cumstances of that case and not as a declaration of law.

A CUE claim is not necessarily an "essential element" of an underlying claim for service connection, and each case must be decided upon its own merits. While a veteran may certainly seek an earlier effective date through a subsequent adjudication of a reopened claim while simultaneously pursuing a CUE claim, those issues are not inextricably related. The effective-date "element" flows directly from the award of service connection; a CUE claim may be brought at any time without at the same time attempting or previously having attempted to reopen the claim for service connection. Because a CUE claim is premised upon an error in a prior, final RO adjudication, an appellant can raise such a claim without also challenging an RO decision regarding one or more of the *West* elements.

Had the appellant here not attempted to reopen his service-connection claim in August 1987, he could not have pursued an earlier effective date because he never would have been granted service connection. The October 1988 Letter was the NOD which initiated the appeal of the November 1987 and all subsequent RO decisions on the issue of service connection. That NOD encompassed all of the essential elements enumerated in *West,* including the appellant's subsequent challenge to the RO's decision concerning the effective date. As established above, the consolidation of the CUE claim with a challenge to the more recent denial of an earlier effective date in *West* does not compel the conclusion *here* that the NOD as to the service-connection claim necessarily encompassed an expression of disagreement with the RO's failure to adjudicate CUE (assuming, as noted, that a CUE claim was presented; *see* Part II. A., *supra* ). Thus, had the appellant here presented a CUE claim in addition to seeking entitlement to an earlier effective date for a grant of service connection, a timely NOD specific to that CUE claim would have conferred jurisdiction upon this Court.

### 2.

Whether a particular document is a valid NOD is a question of law, which this

Court reviews de novo. 38 U.S.C. § 7261(a)(1); *Beyrle,* 9 Vet.App. at 28. The Court is not persuaded that there is a document in the record that can be construed as an NOD with respect to a CUE claim. While an NOD does not require "special wording," it "must be in terms which can reasonably be construed as disagreement with [an RO] determination and a desire for appellate review." 38 C.F.R. § 20.201 (1995). The October 1988 NOD preceded the document which is alleged by the appellant to have been a CUE claim, ie., the June 1992 Memorandum, and thus cannot reasonably be construed as disagreement with an adjudication concerning CUE. The same is true for the July 1989 Statement and the September 1989 Form 1–9. The January 1992 Argument, while perhaps alleging that the early decisions were in some unspecified way erroneous, does not meet the requirements of 38 C.F.R. § 20.201 in that it does not purport to disagree with an RO decision concerning a § 3.105(a) error, or, under *Isenbart v. Brown,* 7 Vet.App. 537 (1995), the failure of the RO to render such a decision. Likewise, and the considered view of our colleague to the contrary notwithstanding, the statements in the September 1992 Memorandum, the November 1992 Form 9, and the November 1992 Form 1–646 do not express disagreement with either an RO decision concerning a claim of CUE, or the failure of the RO to render a decision concerning such a claim.

## III.

The BVA correctly determined that the appellant had never presented a claim of "clear and unmistakable error" as defined by 38 C.F.R. § 3.105(a) and defined by our jurisprudence. However, even if the Board did (and if the Court today does) err in this regard and such a claim could be deemed to have been presented, this Court would not have jurisdiction because there was no NOD relative to such a claim filed after November 18, 1988. Accordingly, the September 22, 1994, decision of the BVA granting "an effective date of August 25, 1987, but no earlier"

is AFFIRMED. *See, e.g., Edenfield v. Brown,* 8 Vet.App. 384 (1995) (en banc).

STEINBERG, Judge, concurring in part and dissenting in part:

I join in the first two paragraphs of part II.A. of the majority opinion (in part), as to the standard of review applicable to review in this Court of a Board of Veterans' Appeals (BVA or Board) decision that a claim of clear and unmistakable error (CUE) had not been adequately raised and as to the requisites under our caselaw of a CUE claim, and in part II.B.1. (except for its *assumption* that a CUE claim was adequately presented below—I would find that it *was* ). I dissent as to part II.A.'s conclusion that the appellant's January 1992 Argument did not adequately raise a CUE claim; as to part II.B.2. and its conclusion that the appellant did not file a jurisdiction-conferring Notice of Disagreement (NOD) as to the CUE claim; and as to part III and its conclusion that the Court lacks jurisdiction as to the CUE claim.[1]

I will discuss these issues in the order established by the majority.

### I. CUE Claim

In the paragraph before the penultimate paragraph of part II.A., the majority concludes that the appellant's November 1992 Form 9 (Appeal to the BVA) and two other documents "do not meet the *Fugo* requirement" for raising a claim of CUE in the Department of Veterans Affairs (VA) Regional Office (RO) decision of 1971 or 1974. *Ante* at 31. I agree. This does not end the matter, however, because the majority's analysis does not address adequately the appellant's January 1992 Argument presented to the BVA (after this Court had in November 1991 granted the parties' joint motion for remand), a document referenced in part I. of the majority opinion. *Ante* at 31. In that Argument, the appellant's representative did all that was necessary to raise a CUE claim as to those prior VARO decisions. He asserted that the RO's February 1971 "deter-

---

**1.** I note with puzzlement that the Court affirms the Board rather than dismissing the appeal for want of a jurisdiction-conferring Notice of Disagreement (NOD). *See Hamilton v. Brown,* 4 Vet.App. 528, 545 (1993) (en banc) (dismissing appeals when Court finds lack of such an NOD), *aff'd,* 39 F.3d 1574, 1586 (Fed.Cir.1994).

mination ... and all subsequent decisions were erroneous for failing to establish entitlement to service connection for bilateral hearing loss by aggravation under the provisions of 38 U.S.C.A. § 1154[and] 38 C.F.R. § 3.306(b)(2)" (R. at 157) and that section 1154 and § 3.306(b)(2) "were not considered or applied to the facts of this case in any AOJ [ (agency of original jurisdiction) ] rating board decision or by the BVA in 1991, even though the specific regulation was brought to the attention of both the AOJ and the BVA" (R. at 158). The cited statutory provision (section 1154) existed in 1971 as section 354 (38 U.S.C. § 354 (1959)), and the regulatory provision (§ 3.306(b)(2)) was in effect in 1971 in its current form (38 C.F.R. § 3.306(b)(2) (1970)).

Hence, in the words of the Court's en banc opinion in *Russell v. Principi*, 3 Vet.App. 310, 313 (1992) (en banc), quoted by the majority, *ante* at 31, the appellant asserted that "the statutory or regulatory provisions extant at the time were incorrectly applied" and if correctly applied would, under the evidence then of record, have established entitlement to service connection for aggravation of the appellant's preexisting hearing loss. R. at 157–59. Thereafter, the Board in February 1992 found new and material evidence, reopened the hearing-loss claim, and awarded service connection. R. at 174–75. The Board did not address the CUE claim but, apparently, returned the case to the RO for the assignment of a rating and an effective date as to that reopened claim. *See* VA ADJUDICATION PROCEDURE MANUAL, M21–1 (MANUAL M21–1), Part IV, para. 8.38(a) ("[w]hen a decision has been made by the BVA, the folder will be returned to the office of jurisdiction"), (b) ("[i]f the BVA reverses a case, refer the claims folder to the rating board or authorization activity, as appropriate, for review and necessary action"); *West v. Brown*, 7 Vet.App. 329, 338 (1995) (en banc) (Steinberg and Kramer, JJ., dissenting).

The RO then, in a May 1992 decision, assigned a 10% rating and an October 24,

1988, effective date but also did not address the CUE claim. *See* R. at 179–80. In June 1992, the RO issued another decision on the effective date for the reopened claim; that decision also did not address the CUE claim for an effective date back to January 1971. R. at 184. In the September 1994 BVA decision here on appeal, the Board did not adjudicate the CUE claim for an effective date back to January 1971, but rather found that the appellant had "not adequately raise[d] a question of [CUE]." R. at 3–4. As discussed in part II., below, in order for this Court to have jurisdiction over this BVA decision as to the CUE claim, there must have been a post-November 17, 1988, NOD as to an RO failure to adjudicate such a claim that was presented to the RO.

The question of whether CUE was adequately raised is, as the Court correctly found in part II.A. of the majority opinion, a matter for de novo review by this Court. *See Fugo v. Brown*, 6 Vet.App. 40, 44–45 (1993) (implicitly adopting de novo review standard where Court decided—without Board having addressed issue—requisite level for reasonably raising CUE claim). In making this assessment at this point in the case, where the BVA has found that a CUE claim was not adequately raised, it must be remembered that all that is before the Court is a threshold question, not whether the CUE claim should have been awarded [2] but whether, as a matter of law, the CUE claim was raised with sufficient specificity. *See id.* at 44.

That question turns on whether the asserted error is the kind that is "undebatable" and "which, had it not been made, would have manifestly changed the outcome at the time it was made" based on the record and law at the time of the RO decision being assailed, *Damrel v. Brown*, 6 Vet.App. 242, 245 (1994); and whether it is expressed with "some degree of specificity as to what the alleged error is and, unless it is that kind of error ... that, if true, would be CUE on its face, persuasive reasons must be given as to why

---

2. The question before the Court when reviewing a BVA decision denying a CUE claim is whether that BVA denial of a CUE claim was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 38 U.S.C. § 7261(a)(3)(A); *see Damrel v. Brown*, 6 Vet.App. 242, 246 (1994); *Russell v. Principi*, 3 Vet.App. 310, 315 (1992) (en banc).

the result would have been *manifestly* different but for the alleged error." *Fugo,* 6 Vet. App. at 44.

Against this framework, I would find, as a matter of law, that the appellant has reasonably raised with sufficient particularity a CUE claim that application of the specific law and regulation pertinent to combat veterans and aggravation of preexisting disability based on the evidence of an increase in disability before the RO in February 1971 would have, on its face, resulted in a finding of aggravation in light of the complete lack of evidence before the RO at that time that the appellant's increased hearing loss was a result of "normal progression", as the RO then found (R. at 42). The law then in effect provided: "A preexisting injury or disease will be considered to have been aggravated by active ... service where there is an increase in disability during such service, unless there is a specific finding that the increase in disability is due to the natural progress of the disease" (38 U.S.C. § 353 (1959); *see* 38 C.F.R. § 3.306(a) (1970)), and, as to veterans of wartime service, "clear and unmistakable evidence" will be required to "rebut the presumption of aggravation where the preservice disability underwent an increase in severity during service" (38 C.F.R. § 3.306(b) (1970)).

In *Akins v. Derwinski,* this Court found CUE in an RO's failure in 1946 to apply Veterans Regulation 1(a), part I, para. 1(b), (d) (1943)—the predecessor provisions of 38 U.S.C. § 353 (1959) and 38 C.F.R. §§ 3.305 and 3.306 as to the presumptions of sound condition and aggravation—reversed the Board's decision finding no CUE, and directed that a CUE claim be allowed. *Akins,* 1 Vet.App. 228, 232–33 (1991). As the Court in *Akins* held:

> The application of the regulation granting the presumption of service connection [aggravation] required that evidence rebutting it be presented and be found to be "clear and unmistakable" to defeat the presumption of service connection. Without this evidence, application of Veterans Regulation 1(a), Part I, paragraphs 1(b) and (d) mandated the presumption of service connection.

*Akins,* 1 Vet.App at 232. Although the Court in *Sondel v. Brown* dismissed an appeal because the appellant had failed to raise a CUE claim before the Board as to a similar aggravation/service-connection issue, the Court noted that the failure of prior adjudications to take the presumption of aggravation into account was a *legal,* not a factual, matter. *Sondel,* 6 Vet.App. 218, 220 (1994). The Court stated:

> While the appellant has raised the issue of CUE before the Board, he did not raise the specific CUE issue presently before this Court. The record amply demonstrates that the appellant claimed that the prior decisions contained CUE regarding the factual determinations that were made. *The appellant never made any allegations before his appeal here that prior adjudications failed to apply the wartime veteran's presumption of aggravation, the CUE issue he seeks to present to this Court. The failure of prior adjudications to take this presumption into account is a legal matter, while the appellant's prior CUE claim was entirely fact driven.*

*Ibid.* (emphasis added).

In the present case, the appellant has asserted more than a disagreement as to how the facts were weighed or evaluated; he has alleged a legal error, the RO's failure in 1971 to apply correctly the law and regulations as to the presumption of aggravation, which include the requirement that evidence rebutting that presumption be a specific finding of natural progression of the injury or disease supported by "clear and unmistakable evidence". Hence, I believe that this is the kind of error that "would be CUE on its face" on the record and law before the RO in February 1971. *See Akins,* 1 Vet.App. at 232 (noting that this Court has held that "failure to observe the requirements of a regulation prejudicial to a veteran constitutes, as a matter of law, clear and unmistakable error"); *see also Fugo,* 6 Vet.App. at 44 (describing *Mata v. Principi,* 3 Vet.App. 558 (1992) (per curiam order), as an example of a CUE "on its face" error).

That a CUE claim was raised with sufficient particularity in this case flows from

*Fugo,* 6 Vet.App. at 44, and the following holding of the Court in *Archbold v. Brown:*

> The CUE claim was first raised by the veteran in the June 1991 letter to the RO. In that letter, although the veteran did not expressly call it a "CUE" claim, the substance of his statement clearly raised CUE in the August 1953 RO decision:
>
>> My concern is to have my disability acknowledged and corrected to at least it's [sic] original 40% which was set on October 9, 1952, at Brooke Army Hospital in San Antonio, Texas.
>>
>> . . . .
>>
>> In summary[,] I feel that the . . . amount paid since September 1, 1953 to present should be corrected, that is a 20% correction for [439] months.
>
> R. at 308, 311; *see Mata,* [*supra*] (concluding that CUE had been properly raised . . . even through appellant did not use term "CUE" in her letter).

*Archbold,* 9 Vet.App. 124, 130–31 (1996).

In this regard, one element of the CUE claim is whether the increase in hearing loss manifested on the separation examination constituted an "increase in disability". 38 U.S.C. § 353 (1959); 38 C.F.R. § 3.306(a) (1970). This Court has not held that in order for an aggravation claim to succeed the condition at discharge must have then constituted a ratable disability. That is a matter for another day. However, the appellant in his September 16, 1996, memorandum and October 16, 1996, reply memorandum has made out a persuasive case for the proposition that the hearing loss demonstrated in the appellant's separation examination in December 1970 would at that point have been a ratable disability entitled to service connection under the then-applicable VA rating criteria, MANUAL M21–1, para. 50.07 (Apr. 30, 1970).[3]

## II. NOD

As the majority opinion concludes in part II.B., it is clear that in order for this Court to have jurisdiction over the CUE-claim issue there must be an NOD, filed after November 17, 1988, as to that issue. *Ante* at 32–34. In order for there to be such an NOD in this case, we would have to make three findings: (1) That a CUE claim was communicated to the RO, *Archbold,* 9 Vet.App. at 130; (2) that thereafter the RO failed to adjudicate that CUE claim, *see Isenbart v. Brown,* 7 Vet. App. 537, 541 (1995); and (3) that the appellant, subsequent both to November 17, 1988, and to such an RO decision, expressed disagreement in writing with such failure in terms sufficient to constitute an NOD, *ibid.*

"Whether a document is an NOD is a question of law for the Court to determine de novo under 38 U.S.C. § 7261(a)(1)." *Archbold,* 9 Vet.App. at 131 (citing *West,* 7 Vet. App. at 331–32 (determining whether jurisdictionally valid NOD filed as to claim where Board had made no such determination); *Hamilton v. Brown,* 4 Vet.App. 528, 538–44 (1993) (en banc), *aff'd,* 39 F.3d 1574, 1582–85 (Fed.Cir.1994)). An NOD must be a "written communication from a claimant or his or her representative expressing dissatisfaction or disagreement with an adjudicative determination by the [AOJ] and a desire to contest the result". *Hamilton,* 4 Vet.App. at 531 (quoting 38 C.F.R. § 20.201 (1995)). It "must be in terms which can be reasonably construed as [expressing] disagreement with that determination and a desire for appellate review". *Ibid; see also Archbold,* 9 Vet.App. at 130.

In a September 17, 1996, order, the Court directed the Secretary and the appellant to reply to the question whether the appellant's January 1992 Supplemental Argument, which I would find had raised the CUE claim adequately (*see* part I., *supra*), had been returned to the RO in February 1992 (when the Board returned the claims folder to the RO for implementation of the Board's award of service connection for bilateral hearing loss) or "whether, under VA regulation or guidance, such document should have been" so returned to the RO with the remanded claim. Neither party adequately addressed those questions, and so I believe it is fair to assume that this document was part of the claims file returned to the RO for adjudica-

---

3. The Secretary concedes in his September 26, 1996, response that this was the applicable rat-

ing provision and constituted a "substantive rule" (Response at 2).

tion at that time and was thus before the RO when in May 1992 (R. at 179–80) and in June 1992 (R. at 184) the RO failed to adjudicate the CUE claim for an effective date of January 1971, the date when the appellant had originally applied for service connection. Thereafter, in November 1992, the appellant submitted a VA Form 9 requesting an earlier effective date "back to 1971" (R. at 197) and his representative very shortly thereafter submitted a VA Form 1–646 (Statement of Accredited Representative in Appealed Case) that argued that the claim had been "denied on the initial and on several subsequent decisions" and that "because the evidence was there in 1971, which led to the granting of his claim, [VA] was in error and should establish an earlier effective date" (R. at 201).

These statements were submitted to the RO in writing and referred to the claim for an effective date "back to 1971" and referred to the error made by RO prior decisions in denying the claim. In my view, under *Isenbart*, 7 Vet.App. at 541, they "sufficiently encompassed the RO's failure to adjudicate the ... claim" in question, and the Form 1–9 itself, given its title, "Substantive Appeal to the BVA", sufficiently manifested "a desire for appellate review" under 38 C.F.R. § 20.201. Hence, I would find a post-VJRA, jurisdiction-conferring NOD as to the CUE claim.

The determination as to whether the VA Forms 9 and 1–646 constituted an NOD is controlled by this Court's holding in *Archbold* that a Form 1–9 (Substantive Appeal to the BVA), "contending that, inter alia, [the appellant] was entitled to a 40% rating for his hand-scar residuals based on the MPBE's [(Military Physical Evaluation Board)] having rated them permanently disabled at 40% ... and that this amount should be corrected for the past 400 months" was "sufficient [as an NOD] to initiate review of the CUE claim by the Board." *Archbold*, 9 Vet.App. at 131; *see also Hamilton*, 4 Vet.App. at 538 (implicitly approving holding in *Malgapo v. Derwinski*, 1 Vet.App. 397, 398–99 (1991) (per curiam order), that a VA Form 1–9 "can itself be an NOD" as to a claim as long as it is the first NOD filed as to that particular claim).

### III. Conclusion

Hence, I would conclude that this Court has jurisdiction over the CUE issue, would reverse the Board decision that a CUE claim was not adequately raised, and would remand for the Board to adjudicate the CUE claim on the merits or to remand it to the RO for initial adjudication. *See Archbold*, 9 Vet. App. at 133, 134 (remanding for adjudication of CUE claim); *Russell*, 3 Vet.App. at 320, 322; *cf. Sondel, supra.*

For the foregoing reasons, I dissent from the Court's result in this case and so much of its reasoning as I have indicated above.