Citation Nr: 1456925 
Decision Date: 12/31/14 Archive Date: 01/09/15

DOCKET NO. 12-14 834 ) DATE
 )
 )
On appeal from the
Department of Veterans Affairs Regional Office in Muskogee, Oklahoma


THE ISSUES


1. Entitlement to an earlier effective date than August 18, 2011, for a grant of a 70 percent rating for schizoaffective disorder with psychophysiological reaction of the musculoskeletal system with headaches. 

2. Entitlement to an earlier effective date than August 18, 2011, for a grant of a total disability rating for compensation based on individual unemployability (TDIU). 

3. Entitlement to an earlier effective date than August 18, 2011, for a grant of basic eligibility to Dependents' Educational Assistance (DEA) under 38 U.S.C. § Chapter 35.



REPRESENTATION

Appellant represented by: Disabled American Veterans

WITNESS AT HEARING ON APPEAL

Appellant
ATTORNEY FOR THE BOARD

J. Andrew Ahlberg, Counsel

INTRODUCTION

The Veteran served on active duty from January 1974 to October 1977. 

This case comes before the Board of Veterans' Appeals (Board) on appeal from a September 2011 rating decision by the Department of Veterans Affairs (VA) Appeals Management Center that granted increased ratings of 70 percent for the Veteran's service connected psychiatric disability as well as entitlement to TDIU and basic eligibility to DEA under 38 U.S.C. § Chapter 35. This appeal is before the Board based on disagreement with the effective dates assigned for the benefits granted by the September 2011 rating decision. As this decision also added schizoaffective disorder to the previously service connected psychiatric disability listed as psychophysiological reaction of the musculoskeletal system with headaches, the claim for service connection for schizoaffective disorder that was remanded by the Board in September 2009 has been fully resolved in the Veteran's favor and is no longer an issue for consideration by the Board. 

In May 2014, the Veteran was afforded a videoconference hearing pursuant to the provisions of 38 U.S.C.A. § 7107(e) (2014). During this hearing, the undersigned Veterans Law Judge was located in Washington, D.C., and the Veteran was located at the RO. 

As a final preliminary matter, the Board notes that, in addition to the paper claims file, the Veteran also has electronic Virtual VA and Veteran Benefits Management System (VBMS) paperless claims files. A review of the documents in the Virtual VA file reveals that aside from the transcript from the May 2014 hearing, they are either duplicative of the evidence in the paper claims file or are irrelevant to the issues on appeal. Further, the Veteran's VBMS file does not contain any documents at this time. 

FINDINGS OF FACT

1. A claim for an increased rating for service connected psychiatric disability, which was denied in a February 2007 rating decision, was received on October 31, 2006; the Veteran filed a notice of disagreement with the February 2007 decision in March 2007 which he withdrew in August 2007. 

2. A claim for pension benefits, which may also be construed as a claim for an increased rating for service connected psychiatric disability and TDIU, was received on February 28, 2007. 

3. The claim for service connection for schizoaffective disorder that was received on May 1, 2007, as it also encompasses the matters of the disability rating and effective date, may also be construed as a claim for an increased rating for the service connected psychiatric disability given that the grant of service connection for such disability ultimately represented a mere change in the designation of the name of the service-connected psychiatric diagnosis under which the Veteran was rated. 
 
4. The positive and negative evidence of record is in relative balance as to whether it was factually ascertainable from June 29, 2006, but no earlier, that the Veteran's service-connected psychiatric disorder resulted in a disability characterized by occupational and social impairment with deficiencies in most areas. 

5. As of June 29, 2006, the Veteran's service-connected disability met the percentage requirements for the award of a schedular TDIU, and the positive and negative evidence on the question of whether the nature and severity of the Veteran's service-connected disabilities prevented him from obtaining and retaining substantially gainful employment from that date, but not before so, is in relative balance.

CONCLUSIONS OF LAW

1. Resolving all reasonable doubt in the Veteran's favor, the criteria for an effective date of June 29, 2006, but no earlier, for a 70 percent rating for the service connected psychiatric disability are met. 38 U.S.C.A. §§ 5103, 5103A, 5107(b), 5110 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.400, 4.3, 4.7 4.13, 4.125, 4.130 (2014). 

2. Resolving all reasonable doubt in the Veteran's favor, the criteria for TDIU are met as of June 29, 2006, but no earlier. 38 U.S.C.A. §§ 1155, 5102, 5103, 5103A, 5107(b), 5110 (West 2014); 38 C.F.R. §§ 3.340, 3.341, 3.400, 4.3, 4.7, 4.16, 4.18, 4.19 (2014).

3. The criteria for basic eligibility to Dependents' Educational Assistance under 38 U.S.C. § Chapter 35 are met effective from June 29, 2006, but no earlier. 
38 U.S.C.A. §§ 3500, 3501, 3510, 3512 (West 2014); 38 C.F.R. §§ 3.327, 3.340, 3.807, 21.3021, 21.3030, 21.3040, 21.3041 (2014).

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. VA's Duties to Notify and Assist

The Veterans Claims Assistance Act of 2000 (VCAA) and implementing regulations imposes obligations on VA to provide claimants with notice and assistance. 38 U.S.C.A. §§ 5102, 5103, 5103A, 5107; 38 C.F.R §§ 3.102, 3.156(a), 3.159, 3.326(a). Proper VCAA notice must inform the claimant of any information and evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the claimant is expected to provide. 
38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b)(1). 

In Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006), the United States Court of Appeals for Veterans Claims (Court) held that the VCAA notice requirements of 38 U.S.C.A. § 5103(a) and 38 C.F.R. § 3.159(b) apply to all five elements of a service connection claim. Those five elements include: 1) Veteran status; 2) existence of a disability; 3) a connection between the Veteran's service and the disability; 4) degree of disability; and 5) effective date of the disability. 

First with respect to the duty to notify, the Board finds that VA has satisfied its duty to notify under the VCAA with respect to the "downstream" issues on appeal. VAOPGCPREC 8-2003, 69 Fed. Reg. 25180 (May 5, 2004); Dingess, supra. In this case, as the Veteran has appealed with respect to the initially assigned effective dates for the benefits granted by the September 2011 rating decision, no additional 38 U.S.C.A. § 5103(a) notice is required because the purpose that the notice is intended to serve has been fulfilled. See Hartman v. Nicholson, 483 F.3d 1311 (Fed. Cir. 2007); Dunlap v. Nicholson, 21 Vet. App. 112 (2007).

Relevant to the duty to assist, as is more thoroughly explained below, the outcomes of the claims on appeal depend exclusively on documents which are already contained in the Veteran's claims file; as such, no additional development could alter the evidentiary posture of this case and the duty to assist has been fulfilled. See Dela Cruz v. Principi, 15 Vet. App. 143, 149 (2001). 

Furthermore and as noted in the Introduction, in May 2014, the Veteran was provided an opportunity to set forth his contentions during the hearing before the undersigned Veterans Law Judge. In Bryant v. Shinseki, 23 Vet. App. 488 (2010), the Court held that 38 C.F.R. § 3.103(c)(2) requires that the Decision Review Officer or Veterans Law Judge who chairs a hearing to fulfill two duties: (1) the duty to fully explain the issues and (2) the duty to suggest the submission of evidence that may have been overlooked. 

Here, during the May 2014 hearing, the undersigned noted the issues on appeal, and specifically informed the Veteran of the manner in which effective dates are assigned. Therefore, not only were the issues "explained . . . in terms of the scope of the claims for benefits," but "the outstanding issues material to substantiating the claims," were also fully explained. See Bryant, 23 Vet. App. at 497. Therefore, the Board finds that, consistent with Bryant, there has been compliance with the duties set forth in 38 C.F.R. § 3.103(c)(2).

Thus, the Board finds that VA has fully satisfied the duty to notify and assist with respect to the issues adjudicated herein, and that additional efforts to assist or notify the Veteran in accordance with the VCAA would serve no useful purpose with respect to such issues. See Soyini v. Derwinski, 1 Vet. App. 540, 546 (1991) (strict adherence to requirements of the law does not dictate an unquestioning, blind adherence in the face of overwhelming evidence in support of the result in a particular case; such adherence would result in unnecessarily imposing additional burdens on VA with no benefit flowing to the appellant); Sabonis v. Brown, 6 Vet. App. 426, 430 (1994) (remands which would only result in unnecessarily imposing additional burdens on VA with no benefit flowing to the appellant are to be avoided). VA has satisfied its duty to inform and assist the Veteran at every stage as to the issues decided herein, at least insofar as any errors committed were not harmful to the essential fairness of the proceeding with respect to such issues. Therefore, he will not be prejudiced as a result of the Board proceeding to the merits of the claims adjudicated herein. 

II. Legal Criteria/Analysis

When there is an approximate balance in the evidence regarding the merits of an issue material to the determination of the matter, the benefit of the doubt in resolving each such issue shall be given to the claimant. 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102. In Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990), the Court held that an appellant need only demonstrate that there is an "approximate balance of positive and negative evidence" in order to prevail. The Court has also stated, "It is clear that to deny a claim on its merits, the evidence must preponderate against the claim." Alemany v. Brown, 9 Vet. App. 518, 519 (1996), citing Gilbert.

Where there is a question as to which of two evaluations shall be applied, the higher rating will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. After careful consideration of the evidence, any reasonable doubt remaining as to the degree of disability is resolved in favor of the Veteran. 38 C.F.R. § 4.3.

Generally, the effective date for an award of service connection is the date of receipt of the claim or date entitlement arose, whichever is later. 38 U.S.C.A. § 5110(a); 38 C.F.R. § 3.400. 

Unless specifically provided otherwise, the effective date of an award based on a claim for increase is generally the date of receipt of the claim or the date entitlement arose, whichever is later. See 38 U.S.C.A. § 5110(a); 38 C.F.R. § 3.400. However, the effective date of an award of increased disability compensation shall be the earliest date as of which it is factually ascertainable that an increase in disability has occurred, if the claim is received within one year from such date; otherwise, it is the date of receipt of the claim. 38 U.S.C.A. § 5110(b)(2); 38 C.F.R. § 3.400(o)(2). 
See Hazan v. Gober, 10 Vet. App. 511 (1997); Servello v. Derwinski, 3 Vet. App. 196 (1992).

In VAOPGCPREC 12-98, VA's General Counsel noted that 38 C.F.R. § 3.400(o)(2) was added to permit payment of increased disability compensation retroactively to the date the evidence establishes the increase in the degree of disability had occurred. VA's General Counsel said this section was intended to be applied in those instances where the date of increased disablement can be factually ascertained with a degree of certainty. It was noted that this section was not intended to cover situations where disability worsened gradually and imperceptibly over an extended period of time.

A "claim" is defined broadly to include a formal or informal communication in writing requesting a determination of entitlement or evidencing a belief in entitlement to a benefit. 38 C.F.R. § 3.1(p); Brannon v. West, 12 Vet. App. 32, 34-35 (1998); Servello, supra. A claim for pension may be considered to be a claim for compensation. 38 C.F.R. § 3.151. 

Any communication indicating an intent to apply for a benefit under the laws administered by the VA may be considered an informal claim provided it identifies, but not necessarily with specificity, the benefit sought. See 38 C.F.R. § 3.155(a). To determine when a claim was received, the Board must review all communications in the claims file that may be construed as an application or claim. See Quarles v. Derwinski, 3 Vet. App. 129, 134 (1992).

Upon receipt of an informal claim, if a formal claim has not been filed, the RO will forward an application form to the claimant for execution. If the RO receives a complete application from the claimant within one year from the date it was sent, the RO will consider it filed as of the date of receipt of the informal claim. 38 C.F.R. § 3.155. 

A report of examination or hospitalization which meets the requirements of this section will be accepted as an informal claim for benefits under an existing law or for benefits under a liberalizing law or VA issue, if the report relates to a disability which may establish entitlement. 38 C.F.R. § 3.157. Once a formal claim for compensation has been allowed, receipt of a report of examination by VA or evidence from a private physician will be accepted as an informal claim for benefits. In the case of examination by VA, the date of examination will be accepted as the date of receipt of a claim. The provisions of the preceding sentence apply only when such reports relate to examination or treatment of a disability for which service-connection has previously been established, or when a claim specifying the benefit sought is received within one year from the date of such examination. In the case of evidence from a private physician, the date of receipt of such evidence by VA will be accepted as the date of the claim. Id. 

38 C.F.R. § 4.13 provides as follows: 

The repercussion upon a current rating of service connection when change is made of a previously assigned diagnosis or etiology must be kept in mind. The aim should be the reconciliation and continuance of the diagnosis or etiology upon which service connection for the disability had been granted. The relevant principle enunciated in § 4.125, entitled "Diagnosis of mental disorders," should have careful attention in this connection. When any change in evaluation is to be made, the rating agency should assure itself that there has been an actual change in the conditions, for better or worse, and not merely a difference in thoroughness of the examination or in use of descriptive terms. This will not, of course, preclude the correction of erroneous ratings, nor will it preclude assignment of a rating in conformity with § 4.7.

If the diagnosis of a mental disorder is changed, the rating agency shall determine whether the new diagnosis represents progression of the prior diagnosis, correction of an error in the prior diagnosis, or development of a new and separate condition. 38 C.F.R. § 4.125(b). 

Pursuant to the General Rating Formula for rating psychiatric disabilities, a 70 percent rating is assigned when there is occupational and social impairment, with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as: suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a worklike setting); inability to establish and maintain effective relationships. 38 C.F.R. § 4.130. 

Use of the phrase "such symptoms as," followed by a list of examples, provides guidance as to the severity of symptoms contemplated for each rating, in addition to permitting consideration of other symptoms, particular to each Veteran and disorder, and the effect of those symptoms on a Veteran's social and work situation. Mauerhan v. Principi, 16 Vet. App. 436, 442 (2002).

A TDIU may be assigned where the schedular rating is less than total, when it is found that the disabled person is unable to secure or follow a substantially gainful occupation as a result of a single service-connected disability ratable at 60 percent or more, or as a result of two or more disabilities, provided at least one disability is ratable at 40 percent or more and there is sufficient additional service-connected disability to bring the combined rating to 70 percent or more. See 38 C.F.R. §§ 3.340, 3.341, 4.16(a). 

The central inquiry for a grant of TDIU is whether service connected disabilities alone are of sufficient severity to produce unemployability. See Hatlestad v. Brown, 5 Vet. App. 524, 529 (1993). Consideration may be given to the Veteran's education, special training, and previous work experience, but not to his age or to the impairment caused by nonservice-connected disabilities. See 38 C.F.R. §§ 3.341, 4.16, 4.19; see also Van Hoose v. Brown, 4 Vet. App. 361 (1993).

The sole fact that a claimant is unemployed or has difficulty obtaining employment is not sufficient for a grant of TDIU. A high rating in itself is recognition that the impairment makes it difficult to obtain or keep employment. The ultimate question, however, is whether a Veteran is capable of performing the physical and mental acts required by employment, not whether he or she can find employment. Van Hoose, 4 Vet. App. at 363.

Notably, however, as recently clarified by the United States Court of Appeals for the Federal Circuit, the ultimate question of whether a Veteran is capable of substantial gainful employment is not a medical one; that determination is for the adjudicator. See Geib v. Shinseki, 733 F.3d 1350, 1354 (Fed. Cir. 2013); Floore v. Shinseki, 26 Vet. App. 376, 381 (2013). As such, the focus of the findings obtained on examination is not on whether the Veteran is unemployable due to his service-connected disabilities, but, rather, the functional impairment caused solely by his service-connected disabilities in concert. VBA Fast Letter 13-13 (June 17, 2013).

Summarizing the record and relevant procedural history with the above legal criteria in mind, a December 2002 rating decision, in pertinent part, denied a rating in excess of 10 percent for the Veteran's service connected psychiatric disability, characterized at that time as psychophysiological reaction of the musculoskeletal system with headaches and rated by analogy to DC 9422 (Pain disorder). The Veteran filed a notice of disagreement with respect to this denial in February 2003 and an August 2003 rating decision increased the rating for the service connected psychiatric disability to 20 percent effective from the date of claim, July 19, 2002. A statement of the case completed in conjunction with this rating decision denied a rating in excess of 20 percent, and the Veteran did not perfect a timely substantive appeal to the Board thereafter. 

Given the above, the December 2002 and August 2003 rating decisions are final, and an earlier effective date prior thereto for any of the benefits at issue cannot be assigned. 38 U.S.C.A. § 7105(c) (West 2002); 38 C.F.R. §§ 3.104, 20.302, 20.1103 (2002)(2003); 38 C.F.R. § 3.400(r) (2014). Similarly, as a May 2005 rating decision denied an increased rating for the service connected psychiatric disability, and the Veteran did not file a timely appeal with respect to this denial, an earlier effective date prior to the date of the May 2005 rating decision also may not be assigned for any of the benefits at issue. 38 U.S.C.A. § 7105(c) (West 2002); 38 C.F.R. §§ 3.104, 20.302, 20.1103 (2004); 38 C.F.R. § .400(r) (2014). 

Thereafter, a claim for an increased rating for the service connected psychiatric disability was received on October 31, 2006, and a claim for pension was received on February 28, 2007. A February 2007 rating decision denied the claim for an increased rating for the service connected psychiatric disability, and the Veteran filed a notice of disagreement with this denial in March 2007. On May 1, 2007, a claim for service connection for schizoaffective disorder was received. In July 2007, the Veteran filed a claim for TDIU and in August 2007, the Veteran withdrew his claim for an increased rating for the service connected psychiatric disability. 

As previously indicated, the September 2011 rating decision by the AOJ granted increased ratings of 70 percent for the service connected psychiatric disability as well as entitlement to TDIU and basic eligibility to DEA under 38 U.S.C. § Chapter 35. This decision also added schizoaffective disorder to the previously service connected psychiatric disability listed as psychophysiological reaction of the musculoskeletal system with headaches, rating such disability under DCs 9422-9211 (Schizoaffective disorder). The effective date chosen for the grants of these benefits was August 18, 2011, the date of a VA psychiatric examination that linked the Veteran's schizoaffective disorder to service. 

The effect of the addition of schizoaffective disorder to the service connected psychiatric disability was to merely change the designation of the name of the service connected psychiatric disability rated under the General Rating Formula for rating psychiatric disabilities. As such, and with application of 38 C.F.R. §§ 4.13 and 4.125, for the purposes of determining the effective dates for the benefits at issue, disability attributed to schizoaffective disorder, to specifically include that resulting from psychotic symptoms, shown prior to the time the claim for service connection for schizoaffective disorder was filed may be considered. 

The Veteran submitted copies of his May 1, 2007, claim for service connection for schizoaffective disorder in October 2011, asserting that earlier effective dates for the benefits in question should be granted on the basis of this communication. However, the Vetean's representative in argument submitted in February 2014, and the Veteran in sworn testimony to the undersigned, asserted that an earlier effective date of October 31, 2006, the date of receipt of his claim for increased rating for his service connected psychiatric disability as set forth above, is warranted for the benefits granted by the September 2011 rating decision. 

While the Board acknowledges the August 2007 withdrawal of the claim for an increased rating received on October 31, 2006, the claim for pension received in February 2007 may be construed as a claim for an increased rating, and as a claim of TDIU may be inferred in connection with this claim given the contentions with respect to the impact upon employment of the service connected psychiatric disability, the February 2007 claim-which may be viewed as a separate claim from the one filed in October 2006 which was thus not withdrawn in August 2007-can be considered as both the date of the claim for increase for the disability at issue and a claim for TDIU. 38 C.F.R. § 3.151; Rice v. Shinseki, 22 Vet. App. 447 (2009). Alternatively, the claim for service connection for schizoaffective disorder that was received on May 1, 2007, as it also encompasses the matter of the disability rating and effective date, may also be construed as a claim for increase-also separate from the withdrawn claim filed in October 2006-particularly given that the effect of the grant of service connection for such disability represented a mere change in the name of the service connected disability. Dingess/Hartman, supra. Therefore, the Veteran may be afforded the benefit of the provisions of 38 C.F.R. § 3.157 with respect to assigning effective dates for increased ratings in that effective dates may be assigned one year earlier than the claims received in February or May 2007. In considering the question of which communication should be viewed as a claim in this case, the undersigned as taken into consideration "the non-adversarial setting of the [VA] claims adjudication process," in which VA is required to construe liberally all submissions by a claimant. See Isenbart v. Brown, 7 Vet. App. 537, 541 (1995); EF v. Derwinski, 1 Vet. App. 324, 326 (1991). 

Examining the clinical records dated one year prior to receipt of the February 28, 2007, claim to determine first whether it is factually ascertainable from any such record that the criteria for a 70 percent rating (occupational and social impairment with deficiencies in most areas) for the service connected psychiatric disability were met, after considering the facts of this case in light of the criteria set forth above, and resolving all reasonable doubt in the Veteran's favor, the undersigned finds that the criteria for a 70 percent rating for the service connected psychiatric disability are met as of June 29, 2006, the date of the first assessment by a VA psychiatrist that the Veteran's psychiatric disability included psychotic symptoms. The assessment at that time was psychosis not otherwise specified and rule out schizoaffective disorder, and the Veteran's medication was changed to Abilify as treatment for psychotic symptoms. Further evidence supporting the fact that, due to psychiatric disability, the Veteran had occupational and social impairment with deficiencies in most areas as of June 29, 2006, so as to warrant a 70 percent rating under 38 C.F.R. § 4.130 from that date is the fact that a VA Vocational Rehabilitation Counseling Psychologist determined that the Veteran was not feasible to participate in a program of rehabilitation (see October 13, 2004, VA memorandum). 

As for a 70 percent rating prior to June 29, 2006, no psychotic symptoms were clinically diagnosed prior to that time; the psychiatric diagnosis prior thereto was major depression (see eg. February 24, 2006, VA outpatient treatment report); and it was not until a June 9, 2006, consultation with a VA social worker-following the Veteran doing research on the internet that led him to believe that his "real problem" was schizophrenia-that there was any reference in a clinical report of record to the possibility of psychotic symptoms. As the social worker could not determine whether the symptoms described by the Veteran truly were representative of a psychotic disorder, the Veteran was referred to a VA psychiatrist to determine whether the psychiatric disability included psychotic symptoms, with such symptoms not being clinically confirmed until the June 29, 2006, evaluation by a VA psychiatrist discussed above. 

From the above, the Board finds the positive and negative evidence as to whether the criteria for a 70 percent rating for the service connected psychiatric disability were met as of June 29, 2006 to be, at a minimum, in relative balance; as such, the undersigned finds that the criteria for a 70 percent for such disability are met from that date, but not earlier. 38 U.S.C.A. §§ 5107(b), 5110; 38 C.F.R. §§ 3.102, 38 C.F.R. § 3.157, 3.400, 4.3, 4.7, 4.130; Gilbert, 1 Vet App. at 53-56. In making this determination, the Board has not required the presence of a specified quantity of symptoms in the rating schedule to warrant a 70 percent rating for the psychiatric disability in question. See supra, Mauerhan. 

With respect to the requested earlier effective date for TDIU, given the determination above, as of June 29, 2006, the Veteran met the objective minimum percentage requirements for TDIU set forth at 38 C.F.R. § 4.16(a). Thus, the remaining question is whether the Veteran's service-connected disability, in fact, has rendered him unemployable since June 29, 2006. See 38 U.S.C.A. § 5110; 38 C.F.R. §§ 3.340, 3.341, 4.3, 4.7, 4.16, 3.400.

Considering the pertinent evidence in light of the above, and again resolving all reasonable doubt in the Veteran's favor, the Board finds that TDIU is warranted from June 29, 2006, but not earlier. As support for the above determination, the Board notes that as in written contentions and sworn testimony, the Veteran has asserted that it was due to psychotic symptoms, to include hallucinations, that he became too disabled to continue his employment as a long distance trucker, the undersigned finds it appropriate to find that the criteria for TDIU were met as of the date psychotic symptoms were first clinically confirmed; namely, the June 29, 2006, VA mental hygiene clinic report noted above. 

In making the above determination, the Board notes that "marginal" employment is not considered substantially gainful employment under 38 C.F.R. § 4.16(a). As such, while the Veteran reported that he was still working as a truck driver during the June 29, 2006, VA mental hygiene clinic visit; indicated that he became too disabled to work in September 2006 on his VA Form 21-8940 "Veterans Application for Increased Compensation based on Unemployability" filed in July 2007; and testified that he last worked full time due to hallucinations in September 2006 at the May 2014 hearing before the undersigned, it is reasonable to assume that as early as June 29, 2006, the Veteran was only employed marginally. In this regard, the December 2006 VA psychiatric examination noted that, due to psychiatric problems, the Veteran had "38 jobs in 30 years," and the Veteran testified at the June 2009 hearing that he had "gone through 38 jobs at least" in 32 years. Reference is again also made in this regard to the VA Vocational Rehabilitation Counseling Psychologist's determination that the Veteran was not feasible to participate in a program of rehabilitation, which also suggests that, even if not working on June 29, 2006, he was only doing so with great difficulty and/or was only marginally employed at that time. 

In short, the Board finds from the above that the positive and negative evidence with respect to the question of whether service-connected psychiatric disability precluded the Veteran from obtaining and maintaining gainful employment since June 29, 2006, is in relative balance. As such, the Board resolves all reasonable doubt in favor of the Veteran and finds that the criteria for TDIU are met effective from June 29, 2006, but not earlier. 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102; Gilbert, 1 Vet App. at 53-56. 

Finally with respect to basic eligibility for DEA under 38 U.S.C. § Chapter 35, as one of the bases for eligibility for this benefit is total and permanent disability rating resulting from a service-connected disability, this claim is derivative of the claim for TDIU. Therefore and given the above determination that the criteria for TDIU are met from June 29, 2006, the criteria for entitlement to basic eligibility for DEA under 38 U.S.C. § Chapter 35 are also met from June 29, 2006, but not earlier. 38 U.S.C.A. §§ 3501 3510, 3512, 5110; 38 C.F.R. §§ 3.400, 3.807(a), 21.3021, 21.3030, 21.3040, 21.3041.

In sum, the Board finds that the criteria for an earlier effective date of June 29, 2006, for a grant of a 70 percent rating for schizoaffective disorder with psychophysiological reaction of the musculoskeletal system with headaches, TDIU, and a grant of basic eligibility to DEA under 38 U.S.C. § Chapter 35 are met. The Board also finds that the preponderance of the evidence is against any claim for entitlement to an effective date earlier than June 29, 2006, for a grant of a 70 percent rating for schizoaffective disorder with psychophysiological reaction of the musculoskeletal system with headaches, TDIU, or a grant of basic eligibility to DEA under 38 U.S.C. § Chapter 35; as such, the benefit of a reasonable doubt doctrine is not applicable with respect to any such claim, and any such claim must be denied. 38 U.S.C.A. § 5107; 38 C.F.R. § 3.102; Gilbert, supra. 

ORDER

An effective date of June 29, 2006, is granted for a 70 percent rating for schizoaffective disorder with psychophysiological reaction of the musculoskeletal system with headaches, subject to the legal authority governing the payment of VA compensation.

An effective date earlier than June 29, 2006, for a 70 percent rating for schizoaffective disorder with psychophysiological reaction of the musculoskeletal system with headaches is denied. 

An effective date of June 29, 2006, is granted for TDIU, subject to the legal authority governing the payment of VA compensation.

An effective date earlier than June 29, 2006, for TDIU is denied. 


An effective date of June 29, 2006, is granted for entitlement to basic eligibility to DEA under 38 U.S.C. § Chapter 35. 

An effective date earlier than June 29, 2006, for a grant of basic eligibility to DEA under 38 U.S.C. § Chapter 35 is denied. 


____________________________________________
MARJORIE A. AUER
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs